# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN SPRATLEY, TIMOTHY CANFIELD, ANDREW CATTANO, JAMES LETT, DENNIS PECK, SUSAN STEBBINS, AND YVETTE TAYLOR, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FCA US LLC f/k/a CHRYSLER GROUP LLC<br><br>Defendant. | Civil Action No.<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Steven Spratley, Timothy Canfield, Andrew Cattano, James Lett, Dennis Peck, Susan Stebbins, and Yvette Taylor on behalf of themselves and all others similarly situated, by and through their undersigned counsel, bring this action against Defendant FCA US LLC f/k/a Chrysler Group LLC, ("Chrysler" or "Defendant"). For their Complaint, Plaintiffs allege the following based on personal knowledge as to their own acts and on the investigation conducted by their counsel as to all other allegations:

## SUMMARY OF THE ACTION

1.      This proposed class action is brought by Plaintiffs in four states who allege that Chrysler concealed a known safety defect from its customers. The defective component is the metal alloy valve stem on vehicles equipped with a tire pressure monitoring system ("TPMS").

2.      A TPMS is an electronic system designed to monitor the air pressure inside the pneumatic tires on various types of vehicles. A TPMS reports real-time tire-pressure information

–1–

to the driver of the vehicle by utilizing pressure sensors in the wheels that transmit pressure information to the vehicle's instrument cluster.

3.      The Firestone tire recall in the late 1990s, which was linked to more than 100 deaths from rollovers following tire tread-separation, prompted the United States Congress to enact legislation mandating the use of TPMS technology in all light motor vehicles (under 10,000 pounds), to help alert drivers of under-inflation events.  This legislation mandated that by 2008 all new passenger car models must be equipped with a TPMS.

4.      The valve stem, a critical component of the TPMS, is subject to corrosion since it protrudes from each tire and is, therefore, exposed to corrosive elements like road salt.  When the valve stem fails, air can be rapidly released from the tire without warning (an "air-out") and at any speed, a condition akin to a tire blow out.

5.      As detailed herein, Plaintiffs and class members purchased Chrysler vehicles fitted with TPMS valve stems with a defect that renders them particularly susceptible to such sudden, life-threatening failures.  This defect is unreasonably dangerous, as it can cause a driver to lose control of the vehicle, and there is often no warning before the valve stems fail.

6.      Indeed, Chrysler recognized the risk posed by a corroded valve stem and, in later model vehicles, replaced the metal alloy valve stems at-issue with a new rubberized part that was less likely to corrode.  Nevertheless, Chrysler has failed to recall the inherently dangerous metal alloy valve stems or reimburse vehicle owners for the inevitable failure of this critical part.

7.      Unfortunately, the TPMS defect is as pervasive as it is dangerous.  The defect affects a number of Chrysler's most popular vehicles, including the Chrysler Town and Country Minivan, Dodge Grand Caravan Minivan, Jeep Liberty, and Dodge Journey SUVs.  Demand for

TPMS replacements parts has been so extreme that the part has often been on nationwide backorder.

8.      Each of the Plaintiffs has suffered harm as a result of Chrysler's decision not to disclose the TPMS defect.  Each Plaintiff bought or leased a 2010 Jeep Liberty, Chrysler Town & Country, or Dodge Journey.  And each Plaintiff has experienced TPMS-related problems, such as the corrosion-related valve stem break at high speeds that causes a rapid loss of tire air.

9.      Chrysler touts the safety benefits of its TPMS system.  For instance, Chrysler's brochure for its 2010 Town and Country states that, "[w]ith features such as Blind Spot Detection System, SmartBeam TM intelligent headlamps, Tire Pressure Monitoring System, and more, Town & Country is prepared for life's unforeseen events." Available at http://www.chrysler.com/en/pdf/2010_town_country.pdf (accessed on August 28, 2014).

10.     Chrysler has long been on notice that the metal alloy valve stems were defective and not fit for their intended purpose of properly and effectively maintaining the air pressure in tires.  Such notice, derived from: Chrysler's own knowledge about the corrosion risks to car parts made from metal alloys that do not sufficiently resist corrosion, feedback, both directly and through its dealers, from its customers during repairs, complaints in the National Highway Transportation Safety Administration ("NHTSA") database beginning as early as July 2009, and a Transport Canada Active Defect investigation of the Chrysler Minivans' corroded valve stems opened in October 2010.   Transport Canada, Active Defect Investigations, available at: http://www.tc.gc.ca/eng/motorvehiclesafety/safevehicles-defectinvestigations-information-active-1239.htm (accessed on August 11, 2014).

11.     Chrysler actively concealed and/or failed to notify the public of the existence and nature of said defect or of the possible safety issues presented by the defect.  Chrysler has not

recalled the vehicles to replace the defective valve stems; it has not offered to replace the defective valve stems to its customers free of charge; and it has not offered to reimburse owners, present or past, who have incurred costs relating to TPMS valve stem replacement and the necessary tire replacement.  Chrysler's conduct violates well-established consumer protection laws in a number of states, including New York.

12.     On behalf of the classes they propose to represent, Plaintiffs seek awards of damages, including the costs of inspecting and replacing the TPMS valve stems as well as the tires that failed as a result of air loss from defective TPMS valve stems, and appropriate equitable relief, including an order requiring Chrysler to adequately disclose and repair the TPMS defect with valve stem assemblies made of corrosion-resistant material.

## PARTIES

13.     Plaintiff Steven Spratley is a citizen and resident of Brooklyn, NY.

14.     Timothy Canfield is a citizen and resident of Marlette, MI.

15.     Plaintiff Andrew Cattano is a citizen and resident of Summit, NJ.

16.     James Lett is a citizen and resident of North Ridgeville, OH.

17.     Dennis Peck is a citizen and resident of Jackson, MI.

18.     Susan Stebbins is a citizen and resident of Rahway, NJ.

19.     Yvette Taylor is a citizen and resident of Holyoke, MA.

20.     Defendant Chrysler's present formal entity name is FCA US LLC, which is a Delaware limited liability company with its principal place of business and national headquarters located in Auburn Hills, Michigan.  FCA US LLC is the U.S. subsidiary of Italian multinational automaker Fiat S.p.A.  Chrysler was formally known as Chrysler Group LLC.  Defendant

designs, manufactures and sells automobiles throughout the United States, including in the State of New York, under the Chrysler brand name and the through its Dodge and Jeep brands. Defendant does business in New York, advertising, distributing, and selling its vehicles through its dealer network and other outlets in the State.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interests and costs.  This is a class action in which more than two-thirds of the proposed plaintiff class are citizens of states other than the Defendant.

22.     This Court has jurisdiction over this action because Defendant operates its business in the State of New York, including within the boundaries of this judicial district; is registered to conduct business in New York and has sufficient minimum contacts in New York; and otherwise intentionally avails itself of the markets within New York through promotion, sale, marketing and distribution of its vehicles, which renders the exercise of jurisdiction by this Court proper and necessary.

23.     Venue is proper in this District, under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims of at least one Plaintiff occurred in this District.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

24.     Chrysler manufactures, markets, distributes, and warrants automobiles in the United States sold under various brand names, including the õJeepö, õDodgeö and õChryslerö

brands.  This lawsuit concerns Chrysler vehicles manufactured after June 10, 2009[1] with TPMS valve stems in "Class Vehicles," which is defined as including the 2010 model year Jeep Liberty, the 2010 model year Dodge Journey, the 2010 model year Chrysler Town & Country, and other Chrysler vehicles that use the same TPMS metal alloy.

### THE TIRE PRESSURE MONITORING SYSTEM (TPMS) VALVE STEM DEFECT

25.     From 2008 onward, Chrysler, through its dealerships, employees, agents, and servants, represented to the public that the Chrysler Class Vehicles containing the defective valve stems were in good condition and fit for their intended purpose.  This representation allowed Defendant to place the Class Vehicles in commerce and profit from their sales.  However, Chrysler knew from the time of manufacture that the TPMS valve stems were made out of metal alloys that could not sufficiently resist corrosion; therefore, the Class Vehicles contained a dangerous, inherent defect from the point of manufacture.

26.     Chrysler, through its dealerships, agents, servants, and employees, was also put on actual and/or constructive notice of the defective valve stem from National Highway and Traffic Safety Administration Office of Defects Investigation (NHTSA-ODI) reports dating back to July 2009, and most likely earlier.  The NHTSA-ODI website allows consumers to "identify and report problems you might be having with your vehicle, tires, equipment or car seats." *See* https://www-odi.nhtsa.dot.gov/ivoq/ (last accessed August 7, 2014) ("If you think you have a problem, we want you to tell us about it.").

---

[1] Plaintiffs have selected this class date solely because it is the date at which Chrysler emerged from bankruptcy.  There are, nevertheless, many Chrysler-brand vehicles on the road manufactured before June 10, 2009 with the defective valve stems that have caused problems for numerous plaintiffs across the country .  Plaintiffs will reference the complaints concerning vehicles manufactured before June 10, 2009, included herein, as evidence of the inherently defective nature of the valve stems.

27.     The Office of Defects Investigation reviews and analyzes complaints to determine whether to issue recalls.  The Vehicle Safety Complaint filing form specifically includes required fields for the name, telephone number, and email address for the complainant, in addition to the VIN number for the vehicle (which are apparently tested by an online database). *See* https://www-odi.nhtsa.dot.gov/VehicleComplaint/index.xhtml (last accessed August 7, 2014). NHTSA-ODI does not share complainantsø personal information with the general public, and a complaint is added to a public NHTSA database only after it removes all information from complaint fields that personally identify a complainant.  *See* https://www-odi.nhtsa.dot.gov/ivoq/ (last accessed August 7, 2014).

28.     NHTSA-ODI specifically states on its website that:

> Government analysts review each complaint in a timely fashion. If warranted, the Office of Defects Investigation (ODI) will open an investigation to determine if a safety defect trend exists. Some of these investigations result in safety recalls.

> While you may or may not be contacted by a NHTSA-ODI investigator to clarify the information submitted, all reports are reviewed and analyzed for potential defects trends.

Thus, NHTSA-ODI complaints are made by individuals who must identify themselves and enter detailed contact information and an accurate VIN number, and these complaints are reviewed and analyzed by the federal government.

29.     NHTSA-ODI reports over 160 complaints, specifically concerning defective valve stems in vehicles of the same make and model as those of the Named Plaintiffs.  True and accurate copies of these complaints are attached hereto as Exhibit A.  The following quotes are drawn from the complaints compiled in this exhibit.

30.     A number of these complaints allege that owners of these vehicles contacted Chrysler directly about the defect as early as March 2010:

- "I requested that fourth TPMS be replace[d], however, the local dealership and Chrysler HQ Customer Service adamantly refused to replace the remaining one."

- "Chrysler is not willing to do anything as far as warranty or defective parts [are] concerned. Their service writer's opinion was- –well, you do live in the Northeast and we do get poor weather.'"

- "[H]e was told the second valve would not be replaced under warranty because it was cracked.  The consumer stated he was unable to inflate the tire."

31.    A number of these complaints allege that Chrysler was notified of the failure:

- "Manufacturer was made aware of the problem [but] did not offer any assistance".

- "The manufacturer was notified and stated they would replace it but the contact had to pay for the repair."

- "The dealer was notified of the failure and they informed the contact that the part needed for repairs was on backorder for a period of two to three months."

32.    Owners have been told by Chrysler representatives that others had a substantial issue with TPMS valve stems corroding and failing, and that the failure was so common that the TPMS valve stems were on backorder:

- "Valve stems have metal threads at end that were broken prior to purchase of vehicle.  Dealer working to replace but have been told there is a large number (approx. 20,000 on back order)."

- "The vehicle was driven to the dealer where the contact was informed that the failure was common but he would need to purchase a replacement."

- "The dodge dealership says this is a common occurrence but will not cover it under warranty."

- "Told by dealership this is a common problem with these tire pressure sensor valve stems on dodge caravans."

- "The dealer replaced the sensor with a rubber valve stem. The contact stated that the air sensor was on back order and he did not know when they would be available."

- "First time this happened it was several weeks before they could replace the stem for us Because they were on back order...there had been so many problems they couldn't keep up!"

33.     Several complaints allege that Chrysler Dealerships acknowledged the pervasiveness of the valve stem problem during the repairs:

- "I contacted Golling Chrysler [and] I spoke with the service person.... I asked him if there were others were having similar problems with the valve stems. He indicated that they were having problems with them. I then asked him if Chrysler was having problems with the stems why the other two stems had not been replaced. He advised that Chrysler has indicated that good stems should not be replaced. I asked if he would guarantee those two stems and he indicated he would not because of the problems they were having."

- "The Dodge Dealerships says this is a common occurrence but will not cover it"

34.     One owner even remarked that the dealership ran out of their stock of valve stems.  This comes as no surprise, since a significant number of complaints report repeated instances of failing valve stems.

- öTire valve stem broke, resulting in an immediate flat tire. This is the second failure on this vehicle. I have had this happen on more than one of the same make & model of vehicles.ö

- öThe sensor has now broken off three separate tires.ö

- öFor the second time the valve stem is defective and corroded.ö

- öWithin less than 3 months all four stems have broken.ö

35.   Accordingly, based upon these admissions by Defendantøs authorized representatives, Defendant was aware of the inferior quality and workmanship of the TPMS valve stems, and that the components would corrode and fail due to the defects.

36.   The complaints all allege that, upon inspection of the deflated or deflating tire, the valve stems had corroded to the point that they broke when touched.  By way of example, below are images of a corroded Chrysler TPMS valve stem from a Town & Country minivan:









37.     Defendant's defective valve stems pose a significant safety risk to drivers.  A number of owners reported that their tires failed due to corroded valve stems while they were driving at highway speeds:

- "Low pressure light came on while driving 70 MPH… pulled over to check tire… while checking the tire pressure in tire the TPMS sensor/valve stem broke causing all of the air to escape from the tire."

- "While driving approximately 55 MPH, the tire sensor unit indicated that one of the tires was low on pressure and the rear driver's side tire became flat. The contact mentioned that the tire valve had failed."

- "Blown tire and valve stem *TGW while driving 65 MPH";

- ö"While driving (at 30 MPH) in our 2008 Dodge Caravan, the right front TPMS valve stem broke off and the tire immediately deflated.... Moved vehicle to side of road."ö

- ö"While driving approximately 50 to 55 mph, a warning indicator illuminated and a tire flattened.  The vehicle was taken to a mechanic who stated that the valve stem disintegrated and the sensor fell inside of the tire."ö

38.    The failure becomes especially dangerous when driving at high speeds because the tires deflate instantly and without warning.

- ö"Front valve stem broke driving on the highway causing the tire to immediately go flat."ö

- ö"Tire valve stem broke off while at highway speed causing the tire to immediately deflate."ö

- Tire went flat in ö"less than 8 seconds."ö

- ö"Tire sensors blowout or failed without any prior notification."ö

- ö"Corroded nut on left front wheel valve stem allowed the stem to drop into the tire resulting in sudden loss of air pressure in tire.  There was no warning prior to very sudden flat tire."ö

- ö"I was driving 50 MPH on a paved highway.  The air pressure light came on.  A few seconds later there was a rumble noise.  I pulled over and looked at the tires. One was completely flat.  I had thought that I ran over something very large causing an instant flat.  After removing the tire, we noted that the tire was still good.  The nut holding the valve stem/pressure sensor in had broken.  The valve

stem/pressure sensor component was found inside the tire. The result was a very large gap where the valve stem was, allowing the tire to instantly deflate. When checking the other valve stems, one of the other nuts holding the valve stems in was also broken. The Jeep is parked until we can remove all of the valve stems and replace them. We will not drive it as it is. We will be replacing the valve stem/pressure sensor component with the old fashion style valve stems. I would not continue to drive the vehicle with the stock equipment. I would always worry about what would happen if the valve stem broke on a front tire going expressway speed in heavy traffic.ö

39.     An instantaneous tire deflation can cause drivers to lose control of their vehicles, especially a rear tire failure at speed. Losing half of the rear cornering stiffness leaves a driver with an over-steering vehicle characterized by much higher steering gain, yet with a very long response time. The ultimate cornering force capacity of the vehicle-rear is reduced to almost half.

40.     Because of this long response time, a driver attempting a quick maneuver may initially sense the vehicle is not reacting and apply more steering input. When the vehicle does respond a second or two later, this natural reaction, combined with the above mentioned higher steering gain, makes it very likely the car is going to over respond. Also, having halved the ultimate lateral force capacity of the rear of the vehicle, it is very easy to spin out. The vehicle is now more stable going backward. Unfortunately, while the vehicle is sideways, it is also possible for the sliding rim of the failed tire to dig into the pavement or for the car to hit a curb or other hazard or to go off the road and trip in soft soil.

41.   The NHTSA complaints demonstrate that drivers have experienced loss of vehicle control because tires have deflated instantly and without warning due to the TPMS valve stems:

- "Valve stem broke off two time [2] on separate occasions, caused tires to lose air quickly, and resulted in tire failure and a loss of control, car crashed into curb."

- "The second one [failed] while I was driving the vehicle... My children and I could have been killed if I didn't pull over immediately."

- "2008 Chrysler Town&Country, left front tire blew out and driver lost control of the vehicle.  Drove off the right side of the roadway striking the right of way fence. – The consumer suffered a minor shoulder injury."[2]

42.   Owners of Class Vehicles may not only lose control of their vehicle, but may also become stranded in unsafe locations due to the failure of the TPMS valve stems:

- "Twice in the past two months the aluminum valve stems that hold the TPMS sensors on our Grand Caravan have broken off. 1st incident in April while vehicle was parked in driveway and second while my wife and children, age 5 and 4 years, were traveling at highway speeds. The second incident stranded my wife and children in 100+ degree heat for close to an hour while they had to wait for AAA to arrive and change the spare for them."

- "Two vehicles required towing due to unsafe location at time of failure."

- "Car picked up from Frank Stifter where he indicated only one valve stem was bad. I asked that he show me what he saw and shared with Frank that our mechanic warned and documented two front stems bad. He insisted only one and showed me. After leaving I went back to Wolbert Auto who specifically showed me that not only were the front two corroded and cracked (nut and valve) but that the back two were already corroding and could soon crack. Same day 07/07/2011 called Chrysler and indicated they may want to replace all four and that it is a safety issue. Later on

---

[2] The NHTSA report did not note the cause of the tire blow out but, given the volume of valve stem failures and the failure to note a cause obvious to a layperson (such as hitting an object), it is fair to infer that a valve stem caused this accident.

07/07/2011 took my two daughters to movies and tires fail on exit... Thank goodness I was on a ramp and not 79 S at a much higher speed. My children were devastated."

- "We had the dealer replace the TPM valve stem but they had to order it and it took a week to get the part. I asked them to change the other 3, but they said they will only replace one valve at a time as they fail. My wife was 9 months pregnant at the time and this is our only car, so I was concerned that it would happen again, possibly while driving since it had broken so easily. Sure enough, two weeks later a second valve stem failed and the tire went flat very fast. Luckily, I was just on my way back to the hospital to bring her a few things and driving slowly on a residential street."

43. Defendant's defective valve stems not only require owners of Class Vehicles to risk their safety and pay for replacement valve stems but, also, to replace tires that were destroyed as a consequence of the defect.

- "One vehicle also required replacement of brand new tire that was destroyed at the time of rapid deflation"

- "The almost new tire (less than 25,000KM) was also destroyed in the process of bring the vehicle to a safe stop."

- "Tire was part of a new set of four bought only 2 days before and had approx. 400 miles of usage."

44. Chrysler's failure to address the defect in its TPMS valve stems continues to this day.  Forums for tire replacement companies provide yet another example of this longstanding problem that Chrysler refuses to address.  Multiple representatives in the industry specifically identify Chrysler vehicles as ones that suffer from this defect more than those of other car manufacturers. *See* Jim Smith, Readers Comments: TPMS Sensor Corrosion a Big Issue, November 8, 2012, http://www.tirereview.com/reader-comments-tpms-sensor-corrosion-a-big-issue/ ("We have seen more corrosion on Chrysler/Dodge/Jeep vehicles than others [and] I do

see a problem with sensors on Chrysler cars to be more than other brands.ö).  In the comments section of the post, readers have added comments detailing their bad experiences with valve stemsas recently as April 2016.

45.    A forum for Dodge users lists comments, most recently from December 2014,from several drivers who have experienced TPMS failures.  *See* öTPMSøs cracking.  Am I the only one???ö by BLM, Nov. 16, 2009, http://www.dodgejourneyforum.com/topic/989-tpmss-cracking-am-i-the-only-one/ .

46.    On information and belief, Chrysler changed the design of the TPMS valve stems sometime in 2011, moving toward the use of corrosion-resistant rubber rather than metal alloy.

47.    Despite over 160 NHTSA complaints, online forums discussing the issue, an open Transport Canada investigation on the defect, and actual notice from its consumers, directly and through its dealers, Chrysler has failed to: (1) disclose the existence of the TPMS valve stem defect to consumers, (2) inform them of the safety issues presented, (3) replace the valve stems bound to fail, or (4) reimburse owners for prior repairs.

48.    Moreover, Defendant has continued to replace the defective valve stems with valve stems made of the same metal alloys that could not withstand corrosion in the first place, as evidenced by the following NHTSA complaints:

- I contacted Golling Chrysler on Telegraph Road in Bloomfield Hills, MI. I spoke with the service person, adam, the problem was fixed it in about an hour and a half. My daughter advised me that her father--in--law had a similar problem with the valve stems on his Ch[r]ysler vehicle. I asked Adam about the valve stems on the two front tires. He indicated that those stems were checked and there were no problems with them. I asked him if there were others were having similar problems with the valve stems. He indicated that they were having problems with them. I then asked him if Chrylser was having problems with the stems why the other two stems had not been replaced. He advised that Chrysler has indicated that good stems should not be replaced. 2009 CHRYSLER TOWN AND COUNTRY NHTSA ID Number 10445109 (January 24, 2012)

–17–

- 2009 Dodge Grand Caravan valve stem failure. In Nov we went out for Thanksgiving supper come out and found front left tire flat, valve stem was broken off and could not find cap or valve. Van had about 38,000 on it. This Sunday pulled back into drive and in matter of seconds rear right went flat. Found same problem. Went over to check left rear and found crack in stem within 1/32" below cap, I called for new stems dealer is out of stock so the van must sit. I will have to put rubber stems in and deal with the light so I can use the van. Now what would happen if my wife or myself with kids and grandkids are on a trip busy roads, lots of traffic and this would happen. When these blow tires are flat in seconds. Its makes me afraid to drive [knowing] this could happen. $74.25 each per stem not including labor. This is not fair or should not be [allowed] on vehicles. 2009 DODGE GRAND CARAVAN NHTSA ID Number 10411902 (July 11, 2011).

49.    The durational limitations in Chrysler's Limited Basic Warranty, as applied to Plaintiff and Class Members, are unconscionable.  Chrysler knew about the inherent defect in the valve stem: (1) when it manufactured the valve stem from metal alloys (which cannot sufficiently resist corrosion), (2) when individuals began to lodge complaints with NHTSA as early as July 2009, (3) when Transport Canada opened its investigation into the defect in October 2010, and (4) before Plaintiffs purchased their Chrysler vehicles.  Still, Chrysler opted not to warn the potential or eventual purchasers about the defect.  Moreover, Chrysler limited the Limited Basic warranty to three (3) years or thirty-six thousand (36,000) miles to insulate itself from liability once the corroded valve stems failed.

50.    Chrysler has never disclosed the TPMS defect to drivers or potential purchasers or lessees of Class Vehicles, and Chrysler has never instructed its dealerships to disclose the TPMS defect to drivers or potential purchasers or lessees of Class Vehicles.

51.    The TPMS defect was not known to or reasonably discoverable by the Plaintiffs and proposed class members before purchase or lease, or without experiencing the defect first hand and exposing themselves to an unreasonable safety risk.

−18−

52.     Chrysler has remained publicly silent even as it has privately acknowledged the defect, conducted internal investigations, observed the TPMS replacement parts go on national backorder, responded to a Transport Canada investigation, and learned of hundreds of complaints about Class Vehicles directly from its customers and from NHTSA.

53.     As a result of Chrysler's inaction and silence, many consumers are unaware that they purchased, and continue to drive, unsafe and unreliable vehicles.  As Chrysler knows, a reasonable person would consider the TPMS defect important and would either not purchase or lease a vehicle with the TPMS defect were the defect disclosed in advance or would pay substantially less for the vehicle.

54.     Plaintiffs neither knew, nor could have known, about the defective materials Chrysler used to manufacture the TPMS valve stems at the time they purchased their Class Vehicles.  Chrysler knowingly manufactured vehicles that contained an inherent defect, but did not inform Plaintiffs of the problem when they agreed to purchase their Class Vehicles or any time thereafter.  Further, Chrysler's warranty intentionally limited the company's liability for the known defect, and Plaintiffs and putative class members never had the opportunity to bargain for a warranty that would have covered the defect because they had no knowledge about its existence.  As such, Chrysler's material omission concerning the existence of the defect rendered the warranty unconscionable as applied to Plaintiff and Class Members.

55.     Many purchasers and lessees of Class Vehicles have spent hundreds of dollars on TPMS repairs and related expenses, such as towing costs.

**PLAINTIFFS' EXPERIENCES**

**Steven Spratley**

–19–

56.     In 2012, Plaintiff Steven Spratley purchased a certified, pre-owned 2010 Chrysler Town & Country minivan with about 65,000 miles from Hudson Chrysler Jeep Dodge in Jersey City, New Jersey. Mr. Spratley's Town & Country came with defective TPMS valve stems. Chrysler did not disclose this fact to Mr. Spratley, who greatly values vehicle safety.

57.     Mr. Spratley uses the minivan for family travel on roads near his residence in Brooklyn, NY, where salt is used in the winter.

58.     From the date of purchase to the present, Plaintiff has serviced his vehicle in a timely and proper manner.

59.     In early 2015, after experiencing a leak in the tire, Mr. Spratley took the vehicle in for repair. When the mechanic attempted to put air in the tire, he observed that the TPMS valve stem was cracked. The mechanic observed that one other TPMS valve stem on the vehicle was cracked as well. Mr. Spratley personally saw the cracked valve stems and observed that one was nearly split in half. Both TPMS valve stems, therefore, needed to be replaced.

60.     Mr. Spratley paid out-of-pocket for the replacement of two TPMS valve stems and he has never received a reimbursement from Chrysler.

**Timothy Canfield**

61.     In January 2013, Plaintiff Timothy Canfield purchased a used 2010 Dodge Journey with 15,000 miles from a dealership in Caro, Michigan. Mr. Canfield's Dodge Journey came with defective TPMS valve stems. Chrysler did not disclose this fact to Mr. Canfield, who greatly values vehicle safety.

62.     Mr. Canfield uses the Dodge Journey for family travel on roads near his residence in Marlette, MI, where salt is used in the winter.

–20–

63.     From the date of purchase to the present, Plaintiff has serviced his vehicle in a timely and proper manner.

64.     Mr. Canfield has paid out-of-pocket to replace two defective TPMS valve stems after separate incidents.  On both occasions, Mr. Canfield was driving his Dodge Journey when the TPMS light flashed on his dashboard immediately before a nearly instantaneous air-out of one of his tires.  After both incidents, Mr. Canfield located the valve stems from the affected tires and found that they nearly crumbled in his hands because they were embrittled from corrosion.

65.     After the first incident, which occurred in December 2015, Mr. Canfield had his vehicle serviced at a Walmart in Sandusky, Michigan, where he paid out of pocket to have his valve stem replaced.  He has never received a reimbursement from Chrysler.

66.     After the second incident, which occurred in January 2016, Mr. Canfield had his vehicle serviced at Belle Tire in Lapeer, Michigan, where he paid out of pocket to have his valve stem replaced.  He has never received a reimbursement from Chrysler.

**Andrew Cattano**

67.     In 2010, Plaintiff Andrew Cattano purchased a 2010 Jeep Liberty from Salerno Duane Jeep Chrysler Dodge Dealers in Summit, NJ.  Mr. Cattano's Jeep Liberty came with defective TPMS valve stems.  Chrysler did not disclose this fact to Mr. Cattano, who greatly values vehicle safety.

68.     Mr. Cattano uses the Jeep for family travel on roads near his residency in Summit, NJ, where salt is used in the winter.

69.     From the date of purchase to the present, Plaintiff has serviced his vehicle in a timely and proper manner.

70.     On May 23, 2015, Plaintiff was driving his Jeep with his wife on Interstate 95 when the TPMS light came on his dashboard and, almost immediately, the right rear tire suddenly and unexpectedly had an "air-out." Despite his initial loss of control, Mr. Cattano successfully pulled the car over and observed that the TPMS module was missing entirely, leaving a gaping hole in the tire's sidewall.

71.     When Mr. Cattano had his vehicle serviced, the mechanic showed him that the TPMS valve stems on the three other tires had begun to crack and could similarly fail at any given moment and, therefore, needed to be replaced.

72.     Mr. Cattano paid out-of-pocket for the replacement of four TPMS valve stems and a new tire.  He has never received a reimbursement from Chrysler.

**James Lett**

73.     In March of 2010, Plaintiff James Lett purchased a new 2010 Chrysler Town & Country from the Ed Tompko Chrysler dealership in Avon Lake, Ohio.  Mr. Lett's Chrysler Town & Country came with defective TPMS valve stems.  Chrysler did not disclose this fact to Mr. Lett, who greatly values vehicle safety.

74.     Mr. Lett uses the Chrysler minivan for family travel, including to transport his young children, on roads near his residence in North Ridgeville, Ohio,where salt is used in the winter.

75.     In June 2014, Mr. Lett's wife was driving down a state road at a speed of about 45 mph – with Mr. Lett as a passenger – when a tire suddenly and unexpectedly had an "air-out." Despite her initial loss of control, Mr. Lett's wife successfully pulled the car over and, upon inspecting the blown tire, Mr. Lett observed that the source of the air-out was a corroded valve

stem.  Mr. Lett paid out-of-pocket to replace the defective TPMS valve stem.  He has never received a reimbursement from Chrysler.

76.    In the summer of 2015, Mr. Lett observed that the three other TPMS valve stems were cracked, and that the fourth one was corroding again.  Mr. Lett paid out-of-pocket to replace the four defective TPMS valve stem.  He has never received a reimbursement for these expenses.

## Dennis Peck

77.    In approximately June of 2010, Plaintiff Dennis Peck purchased a new 2010 Dodge Journey from O'Hara Chrysler Dodge Jeep in Clinton, Michigan.  Mr. Peck's Dodge Journey came with defective TPMS valve stems.  Chrysler did not disclose this fact to Mr. Peck, who greatly values vehicle safety.

78.    Mr. Peck uses the Dodge Journey for family travel on roads near his residence in Jackson, MI, where salt is used in the winter.

79.    From the date of purchase to the present, Plaintiff has serviced his vehicle in a timely and proper manner.

80.    On March 3, 2015, Mr. Peck was driving on a four-lane road to Jackson Airport when he heard a loud noise – as if another car had hit him.  Mr. Peck saw the TPMS warning light come on the dashboard, felt the vehicle pull to the left, and pulled over to the side of the road.  A tire had suddenly and unexpectedly experienced an "air-out."  Mr. Peck observed that the TPMS module was missing entirely and left a gaping hole in the tire, which was the obvious source of the air-out.

81.    Mr. Peck paid out-of-pocket to have the vehicle towed and replace the tire along with the defective TPMS valve stem.  He has never received a reimbursement from Chrysler.

**Susan Stebbins**

82.     In August of 2012, Plaintiff Susan Stebbins purchased a used 2010 Dodge Journey in New Jersey that had 37,000 miles on it.  Ms. Stebbins Dodge Journey came with defective TPMS valve stems.  Chrysler did not disclose this fact to Ms. Stebbins, who greatly values vehicle safety.

83.     Ms. Stebbins uses the Dodge Journey for family travel on roads near her residency in New Jersey, where salt is used in the winter.

84.     From the date of purchase to the present, Plaintiff has serviced her vehicle in a timely and proper manner.

85.     On or near November 23, 2014, Ms. Stebbins was driving on the Garden State Parkway at a speed of about 65-70 mph when she saw that the TPMS warning light come on the dashboard and, almost simultaneously, felt a sudden and unexpected "air-out" of her tire. Despite her initial loss of control, Ms. Stebbins successfully pulled the vehicle over and, upon inspecting the tire, observed that the TPMS module was missing entirely and left a gaping hole in the tire, which was the obvious source of the air-out.

86.     After the incident, she had the vehicle serviced at International Tire and Parts in Linden, NJ.  There, Ms. Stebbins paid out-of-pocket to replace two tires and three TPMS valve stems (the one valve stem from the incident plus two others because they were visibly corroded and cracked).  She has never received a reimbursement from Chrysler.

**Yvette Taylor**

87.     In November of 2010, Plaintiff Taylor purchased a used 2010 Dodge Grand Caravan from D.E. Bourque & Sons, Inc. Automotive Service & Sales  in Holyoke,

Massachusetts.  Ms. Taylor's Dodge Grand Caravan came with defective TPMS valve stems. Chrysler did not disclose this fact to Ms. Taylor, who greatly values vehicle safety.

88.     Ms. Taylor uses the Dodge Grand Caravan for family travel on roads near her residency in Massachusetts, where salt is used in the winter.

89.     From the date of purchase to the present, Plaintiff has serviced her vehicle in a timely and proper manner.

90.     Due to the defective nature of the TPMS valve stems, Ms. Taylor has had to replace all of the original valve stems on her Dodge Grand Caravan.

91.     On December 8, 2014, she paid $140.43 out-of-pocket for her mechanic – D.E. Bourque & Sons, Inc. Automotive Service & Sales – to investigate the source of an under-inflated tire (the defective TPMS valve stem) on her Dodge Grand Caravan and replace the leaking TPMS.  The mechanic informed her that the TPMS was corroded and was causing the tire to lose air.  The TPMS was, indeed, visibly corroded in a manner consistent with the photographs above.

92.     On February 5, 2015, she paid $134.49 out-of-pocket for her mechanic – D.E. Bourque & Sons, Inc. Automotive Service & Sales – to investigate the source of a second under-inflated tire on the front passenger side of her Dodge Grand Caravan and to replace a defective TPMS. The mechanic informed her that the TPMS was corroded and was causing the tire to lose air.

93.     On April 27, 2016, she paid $259.76 out-of-pocket for her mechanic – D.E. Bourque & Sons, Inc. Automotive Service & Sales – to remove and replace defective TPMS on tires on the rear passenger side and the front driver side after again experiencing a third under-inflated tire during a vacation trip in her Dodge Caravan.  The mechanic informed her that the

TPMS was corroded and was causing the tire to lose air. In an abundance of caution, Taylor decided to have the remaining two TPMS replaced for safety reasons.

94.     Ms. Taylor has never received reimbursement from Chrysler for her out-of-pocket expenses to replace the defective TPMS valve stems on her Dodge Grand Caravan.

## CLASS ACTION ALLEGATIONS

95.     Plaintiffs seek to represent the classes set forth below, within which õClass Vehicleö is defined to include all Chrysler vehicles manufactured after June 10, 2009 with the line of metal alloy TPMS valve stems used in the 2010 model year Jeep Liberty, the 2010 model year Dodge Journey, and the 2010 model year Chrysler Town & Country vehicles.

### New York Class

Plaintiff Spratley proposes to represent:

*All persons who purchased or leased a Class Vehicle in New York.*

### New Jersey Class

Plaintiffs Cattano and Stebbins propose to represent:

*All persons who purchased or leased a Class Vehicle in New Jersey.*

### Ohio Class

Plaintiff Lett proposes to represent:

*All persons who purchased or leased a Class Vehicle in Ohio.*

### Michigan Class

Plaintiffs Canfield and Peck propose to represent:

*All persons who purchased or leased a Class Vehicle in Michigan.*

96.     Excluded from each proposed class are: FCA US LLC, Chrysler Group and Chrysler Group LLC; any affiliate, parent, or subsidiary of FCA US LLC, Chrysler Group or

Chrysler Group LLC; any entity in which FCA US LLC, Chrysler Group or Chrysler Group LLC has a controlling interest; any officer, director, or employee of FCA US LLC, Chrysler Group or Chrysler Group, LLC; any successor or assign of FCA US LLC, Chrysler Group or Chrysler Group LLC; anyone employed by counsel for Plaintiffs in this action; any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; and anyone who purchased a Class Vehicle for the purpose of resale.

97.     This action has been brought, and may properly be maintained, on behalf of the classes proposed above, under the criteria of Federal Rule of Civil Procedure 23.

## NUMEROSITY

98.     The members of the classes are so numerous that joinder of all members is impracticable.  The precise number of class members can only be ascertained through discovery, which includes Defendant's sales, service, maintenance and complaint records.  The disposition of their claims through a class action will benefit both the parties and this Court.

## COMMON QUESTIONS OF LAW AND FACT THAT PREDOMINATE

99.     There is a well-defined community of interest in the questions of law and fact affecting the members of each Class.

100.    There are questions of law and fact common to all members of each Class: specifically, Plaintiffs' claims arise from the same event or practice or course of conduct by the Defendant that gives rise to those claims of the putative classes, and Plaintiffs' claims are based upon the same legal theories as those of the putative classes.  The Defendant has engaged in a pattern and practice, in violation of the law, of not informing purchasers or potential purchasers

of the known defect in the Class Vehiclesø valve stems. The resolution of this issueô to wit, whether Defendants knew about the defect and did not inform Plaintiffs and Class Membersô is a common question of fact and law that will affect all members of the class in the same manner.

101.   The questions of law and fact common to the Class predominate over questions that may affect individual members, and include the following:

a.   whether the valve stems manufactured by Defendant in the Class Vehicles contained defects that caused the valve stems to corrode and fall apart;

b.   whether all, or an identifiable portion, of the Class Vehicles possess the defect alleged;

c.   whether the Defendant violated state consumer protection laws;

d.   whether class members are entitled to actual damages and, if so, the appropriate amount thereof;

e.   whether members of the classes are entitled to be notified and warned about the defect and are entitled to the entry of final and injunctive relief compelling Defendant to issue a notification and warning to all class members concerning such a defect;

f.   whether Defendant deliberately failed to disclose material facts to Plaintiffs and the class members; and

g.   whether Defendant manufactured defective valve stems in the TPMS and should replace them, along with any destroyed tires, at no cost to Plaintiffs and the class members, because of the safety hazards presented.

## TYPICALITY

102.   The claims and defenses of the Named Plaintiffs are representative of the classes they seek to represent and typical of the claims and defenses of the classes because the Plaintiffs

–28–

and the class members all owned Class Vehicles with defective valve stems that were manufactured and sold by Defendant.  Plaintiffs, like all class members, purchased their Class Vehicles without having received any warning or notification from Defendant of the defect.

## ADEQUACY OF REPRESENTATION

103.    The Named Plaintiffs will fairly and adequately assert and protect the interests of the proposed classes because:

a.    Plaintiffs have hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the classes;

b.    Plaintiffs have no conflict of interest that will interfere with the maintenance of this class action; and

c.    Plaintiffs have suffered consumer-related injuries and damages.

## SUPERIORITY

104.    A class action provides a fair and efficient method for the adjudication of the instant controversy for the following reasons:

a.    The common questions of law and fact set forth above predominate over any questions affecting only individual class members;

b.    The proposed classes are each so numerous that joinder would prove impracticable.  The proposed classes, however, are not so numerous as to create manageability problems; moreover,no unusual legal or factual issues render the classes unmanageable.

c.    Prosecution of separate actions by individual members of the classes would risk inconsistent and varying adjudications against Defendant;

      d.     The claims of the individual class members are small in relation to the expenses of litigation, making a class action the only procedure in which class members can, as a practical matter, recover.

      e.     A class action would be superior to, and more efficient than, adjudicating thousands of individual lawsuits.

105.    In the alternative, the proposed classes may be certified because:

      a.     the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Chrysler;

      b.     the prosecution of separate actions by individual class members would create a risk of adjudications dispositive of the interests of other class members not parties to the adjudications and substantially impair or impede their ability to protect their interests; and

      c.     Chrysler has acted or refused to act on grounds generally applicable to the proposed classes, which justifies final and injunctive relief for the members of the proposed classes as a whole.

**ESTOPPEL FROM PLEADING AND TOLLING OF**
**APPLICABLE STATUTES OF LIMITATIONS**

106.    Chrysler is estopped from relying on any statutes of limitation or repose due to its acts of concealment.  Upon information and belief, and as otherwise detailed herein, Defendant knew about the defect in the Class Vehicles for years, but concealed it and/or failed to alert purchasers or potential purchasers.  Defendant maintained exclusive control over information

−30−

concerning the known, but non-public, valve stem defect and the number of Class Vehicles at issue;  Plaintiffs and class members, therefore, could not reasonably have known about the existence of the defect or the number of Class Vehicles affected.  Thus, Defendant is estopped from relying on any statutes of limitations or repose that might otherwise be applicable to the claims asserted herein.

## FIRST CAUSE OF ACTION
### By Plaintiff Spratley on Behalf of the New York Class
### For Unfair and Deceptive Trade Practices in Violation of New York General Business Law Section 349, *et seq*.

107.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

108.   Plaintiff Spratley asserts this cause of action on behalf of himself and the New York Class.

109.   Defendant's practices, acts, policies, and course of conduct, including its omissions, as described above, were intended to induce, and did induce, Plaintiff Spratley and members of the New York Class to purchase the above-mentioned Class Vehicles with defective TPMS valve stems.

110.   Defendant sold and/or leased the Class Vehicles knowingly concealing that they contained the defects alleged.

111.   Defendant's acts are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the Class Vehicles.   Chrysler's aforementioned deceptive acts and practices are material, in part, because they concern an essential facet of the Class Vehicles' functionality and safety.  The sale and distribution of the

Class Vehicles in New York was a consumer-oriented act and thereby falls under the New York deceptive acts and practices statute, General Business Law Section 349.

112.    Defendant's practices, acts, policies and course of conduct violated New York's General Business Law Section 349 Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349 (McKinney), *et seq.*, in that:

a.    At the time of sale, Defendant knowingly misrepresented and intentionally omitted and concealed material information regarding the Class Vehicles by failing to disclose to Plaintiff Spratley and New York Class Members the known defects in the TPMS valve stem and the known risks associated therewith.

b.    Thereafter, Defendant failed to disclose the defects to Plaintiff Spratley and the New York Class Members, either through warnings or recall notices, and/or actively concealed from them the fact that the Class Vehicles' TPMS valve stems were defective, despite the fact that the company knew of such defects: (1) at the time of manufacturing, when it created the valve stems out of metal alloys that cannot sufficiently resist corrosion; (2) at the point where NHTSA began to record complaints about the defect in July 2009; and, at the very latest, (3) when Transport Canada opened an investigation into the defect in October 2010.

c.    Defendant forced Plaintiff Spratley and the New York Class Members to expend sums of money at its dealerships to repair and/or replace the defective valve stems and deflated tires on the Class Vehicles, despite the fact that Defendant had prior knowledge of the defects at the time of purchase.

d.    Defendant also engaged in materially misleading deceptive acts and practices by advertising and selling a limited warranty while knowing that

significant portions of the damages resulting from the known, but concealed, valve stem defect would not be revealed to the consumer until after coverage expired thereunder and that many of the defective valve stems would fail prematurely, but outside the warranty period.

e.      Additionally, Defendant, in administering the limited warranty, engaged in materially misleading deceptive acts and practices by replacing corroded valve stems with equally defective units and refusing to replace valve stems known to be defective until their actual failure.

f.      Furthermore, Defendant engaged in materially misleading and deceptive acts by continuing to sell the Class Vehicles to the consuming public and to represent that these vehicles were in good working order, merchantable, and not defective, despite Defendant's knowledge that the vehicles would not perform as intended, represented, and warranted and that the above described defects would cause purchasers to incur significant out-of-pocket costs and expenses.

113.    The aforementioned conduct is and was deceptive and false and constitutes an unconscionable, unfair, and deceptive act or practice in that Defendant has, through knowing, intentional, and material omissions, concealed the true, defective nature of the valve stems in the TPMS.

114.    By making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

115.    Members of the public were deceived by Defendant's failure to disclose and could not discover the defect themselves before suffering their injuries.

116.    As a direct and proximate result of these unconscionable, unfair, and deceptive acts or practices, Plaintiff Spratley and the New York Class Members have been damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

117.    Plaintiff Spratley and New York Class Members seek restitution of the substantial sums of money they expended to replace their Chrysler Minivans' defective TPMS valve stems and the tires destroyed as a result of the defect, which Defendant knew about prior to the sale of the Class Vehicles.

118.    Plaintiff Spratley and New York Class Members also seek appropriate equitable relief, including an order requiring Chrysler to adequately disclose and remediate the TPMS valve stem defect and an order enjoining Chrysler from incorporating the defective TPMS into its vehicles in the future.

**SECOND CAUSE OF ACTION**
**By Plaintiffs Cattano and Stebbins on Behalf of the New Jersey Class**
**For Violation of New Jersey Consumer Fraud Act,**
**N.J. Stat. §56:8-1, *et seq*.**

119.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

120.    Class Vehicles are "merchandise" under N.J. Stat. § 56:8-1(c).

121.    Chrysler is a "person" under N.J. Stat. § 56:8-1(d).

122.    Class members' purchases and leases of Class Vehicles are "sales" under N.J.

Stat. § 56:8-1(e).

123.   Chrysler's conduct, as alleged herein, violated the New Jersey Consumer Fraud Act, N.J. Stat. 56:8-2, in that it used an unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of merchandise or Chrysler's subsequent conduct, including in the following ways:

a.   At the time of sale, Defendant knowingly misrepresented and intentionally omitted and concealed material information regarding the Class Vehicles by failing to disclose to Plaintiffs Cattano and Stebbins, along with the New Jersey Class Members, the known defects in the TPMS valve stem and the known risks associated therewith.

b.   Thereafter, Defendant failed to disclose the defects to Plaintiffs Cattano and Stebbins, in addition to the New Jersey Class Members, either through warnings or recall notices, and/or actively concealed from them that the Class Vehicles' TPMS valve stems were defective, even though the company knew of such defects: (1) at the time of manufacturing, when it created the valve stems out of metal alloys that cannot sufficiently resist corrosion; (2) at the point where NHTSA began to record complaints about the defect in July 2009; and, at the very latest, (3) when Transport Canada opened an investigation into the defect in October 2010.

c.   Defendant forced Plaintiffs Cattano and Stebbins, as well as the New Jersey Class Members to expend sums of money at its dealerships to repair and/or replace the defective valve stems and deflated tires on the Class Vehicles, despite Defendant's prior knowledge of the defects at the time of purchase.

−35−

    d.     Defendant also engaged in materially misleading deceptive acts and practices by advertising and selling a limited warranty while knowing that significant portions of the damages resulting from the known, but concealed, valve stem defect would not be revealed to the consumer until after coverage expired thereunder and that many of the defective valve stems would fail prematurely, but outside the warranty period.

    e.     Additionally, Defendant, in administering the limited warranty, engaged in materially misleading deceptive acts and practices by replacing corroded valve stems with equally defective units and refusing to replace valve stems known to be defective until their actual failure.

    f.     Furthermore, Defendant engaged in materially misleading and deceptive acts by continuing to sell the Class Vehicles to the consuming public and to represent that these vehicles were in good working order, merchantable, and not defective, despite Defendant's knowledge that the vehicles would not perform as intended, represented, and warranted and that the above described defects would cause purchasers to incur significant out-of-pocket costs and expenses.

124.   The aforementioned conduct is and was deceptive and false and constitutes an unconscionable, unfair, and deceptive act or practice in that Defendant has, through knowing, intentional, material omissions, concealed the true defective nature of the valve stems in the TPMS.

125.   In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts in breach of its duty not to do so.

126.    Members of the public were deceived by Defendant's failure to disclose and could not discover the defect themselves before suffering their injuries.

127.    As a direct and proximate result of these unconscionable, unfair, and deceptive acts or practices, Plaintiffs Cattano and Stebbins, along with the New Jersey Class Members, have been damaged because: they purchased Class Vehicles they otherwise would not have, paid more for Class Vehicles than they otherwise would, paid for TPMS diagnoses, repairs, and replacements, towing, and/or rental cars, and are left with Class Vehicles of diminished value and utility because of the defect.  Meanwhile, Chrysler has sold more Class Vehicles than it otherwise could have and charged inflated prices for Class Vehicles, thereby unjustly enriching itself.

128.    Plaintiffs Cattano and Stebbins, along with the New Jersey class, seek restitution of the substantial sums of money they expended, including the expense of replacing their Chrysler Minivans' defective TPMS valve stems and the tires destroyed as a result of the defect, which Defendant knew about prior to the sale of the Class Vehicles.

129.    Plaintiffs Cattano and Stebbins, as well as the New Jersey class, also seek appropriate equitable relief, including an order requiring Chrysler to adequately disclose and remediate the TPMS valve stem defect and an order enjoining Chrysler from incorporating the defective TPMS into its vehicles in the future.

**THIRD CAUSE OF ACTION**
**By Plaintiff Lett on Behalf of the Ohio Class**
**For Violation of the Ohio Consumer Sales Practices Act,**
**Ohio Rev. Code. § 1345.01, *et seq*.**

130.    Plaintiff hereby incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully herein, and further states:

131.    At all times relevant to this suit, Chrysler was a "supplier," as defined in the Ohio Consumer Sales Practices Act.  Ohio Rev. Code § 1345.01.

132.    At all times relevant to this suit, Plaintiff Lett and the Ohio Class members were "consumers," as defined in the Ohio Consumer Sales Practices Act.  Ohio Rev. Code § 1345.01.

133.    As a result of placing a defective product into the stream of commerce, Chrysler has breached its implied warranty in tort, which is an unfair and deceptive act as defined in Ohio Rev. Code § 1345.09(B).

134.    Chrysler has committed unfair and deceptive acts, in violation of Ohio's Consumer Sales Practices Act, by knowingly placing into the stream of commerce Class Vehicles equipped with defective TPMS valve stems that result in, among other problems, sudden and unexpected tire air-outs.

135.    Moreover, Chrysler has committed unfair, deceptive, and unconscionable acts by knowingly concealing the defect in the Class Vehicles, failing to inform Plaintiff Lett and the other Ohio Class members of this defect, and in the following ways:

        a.      At the time of sale, Defendant knowingly misrepresented and intentionally omitted and concealed material information regarding the Class Vehicles by failing to disclose to Plaintiff Lett and Ohio Class Members the known defects in the TPMS valve stem and the known risks associated therewith.

        b.      Thereafter, Defendant failed to disclose the defects to Plaintiff Lett and the Ohio Class Members, either through warnings or recall notices, and/or actively concealed from them the fact that the Class Vehicles' TPMS valve stems were defective, even though Chrysler knew of such defects: (1) at the time of manufacturing, when it created the valve stems out of metal alloys that cannot sufficiently resist corrosion; (2) at the point where NHTSA began to

record complaints about the defect in July 2009; and, at the very latest, (3) when Transport Canada opened an investigation into the defect in October 2010.

        c.     Defendant forced Plaintiff Lett and Ohio Class Members to expend sums of money at its dealerships and elsewhere to repair and/or replace the defective valve stems and deflated tires on the Class Vehicles, despite Defendant's prior knowledge of the defects at the time of purchase.

        d.     Defendant also engaged in materially misleading deceptive acts and practices by advertising and selling a limited warranty while knowing that significant portions of the damages resulting from the known, but concealed, valve stem defect would not be revealed to the consumer until after coverage expired thereunder and that many of the defective valve stems would fail prematurely, but outside the warranty period.

        e.     Additionally, Defendant, in administering the limited warranty, engaged in materially misleading deceptive acts and practices by replacing corroded valve stems with equally defective units and refusing to replace valve stems known to be defective until their actual failure.

        f.     Furthermore, Defendant engaged in materially misleading and deceptive acts by continuing to sell the Class Vehicles to the consuming public and to represent that these vehicles were in good working order, merchantable, and not defective, despite Defendant's knowledge that the vehicles would not perform as intended, represented, and warranted and that the above described defects would cause purchasers to incur significant out-of-pocket costs and expenses.

        136.   The aforementioned conduct is and was deceptive and false and constitutes an unconscionable, unfair, and deceptive act or practice in that Defendant has, through knowing,

intentional, and material omissions, concealed the true defective nature of the TPMS valve stems.

137.    By making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts in breach of its duty not to do so.

138.    Members of the public were deceived by Defendant's failure to disclose and could not discover the defect themselves before suffering their injuries.

139.    The Ohio Attorney General has made available for public inspection prior state court decisions which have held that acts and omissions similar to kinds alleged in this Complaint, including, but not limited to, the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of Ohio's Consumer Sales Practices Act. These cases include, but are not limited to, the following:

a.    *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

b.    *State ex rel. Betty D. Montgomery v. Ford Motor Co.* (OPIF #10002123);

c.    *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

d.    *Bellinger v. Hewlett-Packard Co.,* No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

e.    *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

f.    *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

g.    *Mark J. Cranford, et al. v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

h.   *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304);

i.   *Brinkman v. Mazda Motor of America, Inc.,* (OPIF #10001427);

j.   *Khouri v. Don Lewis*, (OPIF #100001995);

k.   *Mosley v. Performance Mitsubishi aka Automanage*, (OPIF #10001326);

l.   *Walls v. Harry Williams dba Butch's Auto Sales*, (OPIF #10001524); and,

m.   *Brown v. Spears*, (OPIF #10000403).

140.   Chrysler committed these and other unfair and deceptive acts in connection with the marketing and sale of the Class Vehicles.

141.   As a direct and proximate result of these unconscionable, unfair, and deceptive acts or practices, Plaintiff Lett and Ohio Class Members have been damaged because they: purchased Class Vehicles they otherwise would not have purchased, paid more for Class Vehicles than they otherwise would have paid, paid for TPMS diagnoses, repairs, and replacements, towing, and/or rental cars, and are left with Class Vehicles of diminished value and utility because of the defect. Meanwhile, Chrysler has sold more Class Vehicles than it otherwise could and charged inflated prices for Class Vehicles, thereby unjustly enriching itself.

142.   Plaintiff Lett and Ohio Class Members seek restitution of the substantial sums of money they expended, including to replace their Chrysler Minivansø defective TPMS valve stems and the tires destroyed as a result of the defect, which Defendant knew about prior to the sale of the Class Vehicles.

143.   Plaintiff Lett and the Ohio Class also seek appropriate equitable relief, including an order requiring Chrysler to adequately disclose and remediate the TPMS valve stem defect and enjoining Chrysler from incorporating the defective TPMS into its vehicles in the future.

144.     Chrysler is liable to Plaintiff Lett and the other Ohio Class members for compensatory damages, injunctive/equitable relief, and attorneysø fees pursuant to Ohio Rev. Code § 1345.09.

## FOURTH CAUSE OF ACTION
### By Plaintiffs Canfield and Peck on Behalf of the Michigan Class
### For Unfair and Deceptive Trade Practices in Violation of Michigan Consumer Protection Act ("MCPA"), Michigan Comp. Laws Ann. § 445.903 *et seq*.

145.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

146.     Plaintiffs Canfield and Peck assert this cause of action on behalf of themselves and the Michigan Class.

147.     At all relevant times hereto, Defendant was a õpersonö engaged in õtrade or commerceö within the meaning of MCPA, M.C.L.A. § 445.902(1)(d) and (g).

148.     Defendantøs practices, acts, policies, and course of conduct, including its omissions described above, were intended to induce, and did induce, Plaintiffs Canfield and Peck, and members of the Michigan Class, to purchase the above-mentioned Class Vehicles with defective TPMS valve stems.

149.     Defendant sold and/or leased the Class Vehicles while knowingly concealing that they contained the defects alleged above.

150.     Acts by Defendant are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the vehicle. The aforementioned deceptive acts and practices are material, in part, because they concern an essential facet of the Class Vehiclesø functionality and safety.

151.   Defendant's practices, acts, policies and course of conduct violated the MCPA, M.C.L.A. § 445.902(1) in that:

a.     At the time of sale, Defendant knowingly misrepresented and intentionally omitted and concealed material information regarding the Class Vehicles by failing to disclose to Plaintiffs Canfield and Peck, as well as the Michigan Class Members, the known defects in the TPMS valve stem and the known risks associated therewith.

b.     Thereafter, Defendant failed to disclose the defects to Plaintiffs Canfield and Peck, in addition to the Michigan Class Members, either through warnings or recall notices, and/or actively concealed from them the fact that the Class Vehicles' TPMS valve stems were defective, even though Chrysler knew of such defects: (1) at the time of manufacturing, when it created the valve stems out of metal alloys that cannot sufficiently resist corrosion; (2) at the point where NHTSA began to record complaints about the defect in July 2009; and, at the very latest, (3) when Transport Canada opened an investigation into the defect in October 2010.

c.     Defendant forced Plaintiffs Canfield and Peck, and the Michigan Class Members, to expend sums of money at its dealerships to repair and/or replace the defective valve stems and deflated tires on the Class Vehicles, despite Defendant's prior knowledge of the defects at the time of purchase.

d.     Defendant also engaged in materially misleading deceptive acts and practices by advertising and selling a limited warranty while knowing that significant portions of the damages resulting from the known, but concealed,

valve stem defect would not be revealed to the consumer until after coverage expired thereunder and that many of the defective valve stems would fail prematurely, but outside the warranty period.

e.     Additionally, Defendant, in administering the limited warranty, engaged in materially misleading deceptive acts and practices by replacing corroded valve stems with equally defective units and refusing to replace valve stems known to be defective until their actual failure.

f.     Furthermore, Defendant engaged in materially misleading and deceptive acts by continuing to sell the Class Vehicles to the consuming public and to represent that these vehicles were in good working order, merchantable, and not defective, despite Defendant's knowledge that the vehicles would not perform as intended, represented, and warranted and that the above described defects would cause purchasers to incur significant out-of-pocket costs and expenses.

152.   The aforementioned conduct is and was deceptive and false and constitutes an unconscionable, unfair, and deceptive act or practice in that Defendant has, through knowing, intentional, and material omissions, concealed the true defective nature of the TPMS valve stems.

153.   In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts in breach of its duty not to do so.

154.   Members of the public were deceived by Defendant's failure to disclose and could not discover the defect themselves before suffering their injuries.

155.    As a direct and proximate result of these unconscionable, unfair, and deceptive acts or practices, Plaintiffs Canfield and Peck and Michigan Class Members have been damaged because they: purchased Class Vehicles they otherwise would not have purchased, paid more for Class Vehicles than they otherwise would have paid, paid for TPMS diagnoses, repairs, and replacements, towing, and/or rental cars, and are left with Class Vehicles of diminished value and utility because of the defect.   Meanwhile, Chrysler sold more Class Vehicles than it otherwise could and charged inflated prices for Class Vehicles, thereby unjustly enriching itself.

156.    Plaintiffs Canfield and Peck, along with the Michigan Class Members, seek restitution of the substantial sums of money they expended, including to replace their Class Vehicles' defective TPMS valve stems and the tires destroyed as a result of the defect, which Defendant knew about prior to the sale of the Class Vehicles.

157.    Chrysler committed these and other unfair and deceptive acts in connection with the marketing and sale of the Class Vehicles.   Chrysler is liable to Plaintiffs Canfield and Peck, as well as the other Michigan Class members for monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiffs and each Class Member.   Plaintiffs Canfield and Peck and the Michigan Class Members also seek reasonable attorneys' fees and equitable relief, including an order requiring Chrysler to adequately disclose and remediate the TPMS valve stem defect and enjoining Chrysler from incorporating the defective TPMS into its vehicles in the future, as well as any other just and proper relief available under the Mich. Comp. L. Ann. § 445.911.

**FIFTH CAUSE OF ACTION**
**By Plaintiffs Canfield and Peck on Behalf of the Michigan Class**
**For Breach of the Implied Warranty of Merchantability**

–45–

158.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

159.   Plaintiffs Canfield and Peck assert this cause of action on behalf of themselves and the Michigan class.

160.   The Class Vehicles are "goods" within the meaning of Mich. Comp. Laws Ann. § 440.2314.

161.   A warranty that goods shall be merchantable and fit for the ordinary purposes for which such goods are used is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

162.   As the manufacturer of the Class Vehicles who also sells them through its dealers, Chrysler is a "merchant" within the meaning of Mich. Comp. Laws Ann. § 440.2104 with respect to the Class Vehicles.

163.   Chrysler's implied warranty that the Class Vehicles were merchantable was part of the basis of the bargain between Chrysler and Plaintiffs and members of the Michigan Class.

164.   Chrysler has not validly disclaimed, excluded, or modified the implied warranties and/or duties described herein, and/or any attempted disclaimer or exclusion of the same was and is ineffectual.

165.   The Class Vehicles are not merchantable because the TPMS valve stems contain a dangerous safety defect in which they inevitably corrode when exposed to elements like road salt, leading to an unforeseeable tire air-out at any speed.  Accordingly, the TPMS valve stems not of fair average quality within the description and are not fit for the ordinary purposes for which such goods are used.

–46–

166.    Chrysler was provided notice of these issues and defects through 160 NHTSA complaints, online forums discussing the issue, an open Transport Canada investigation on the defect, and actual notice from its consumers, directly and through its dealers.

167.    As a direct and proximate result of Chrysler's breach of the warranties of merchantability, Plaintiffs and members of the Michigan Class have been damaged in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION
**By Plaintiff Taylor on Behalf of the Massachusetts Class for Violation of Massachusetts' Consumer Protection Act, Mass. Gen Laws, ch. 93A, *et. seq.***

168.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

169.    Plaintiff Taylor asserts this cause of action on behalf of herself and the Massachusetts Class.

170.    Mass. Gen. Laws ch. 93A § 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

171.    At all relevant times, Chrysler was engaged in commerce within the meaning of Mass. Gen. Laws, ch. 93A.

172.    As alleged more fully herein, Chrysler has violated Mass. Gen. Laws, ch. 93A in that it used unconscionable business practices by failing to disclose, at the point of sale or otherwise, that the TPMS valve stems in Class Vehicles are defective and pose a safety hazard.

173.    As a direct and proximate result of Chrysler's conduct, Plaintiff Taylor and other members of the Massachusetts class have been harmed in that they purchased Class Vehicles

they otherwise would not have, paid more for Class Vehicles than they otherwise would, paid for TPMS diagnoses, repairs, and replacements, towing, and/or rental cars, and are left with Class Vehicles of diminished value and utility because of the defect.  Meanwhile, Chrysler has sold more Class Vehicles than it otherwise could have and charged inflated prices for Class Vehicles, unjustly enriching itself thereby.

174.    Pursuant to Mass. Gen. Laws ch. 93A § 3, Plaintiff Taylor seeks damages and appropriate equitable relief, including an order requiring Chrysler to adequately disclose and repair the TPMS defect, and an order enjoining Chrysler from incorporating the defective TPMS into its vehicles in the future.

175.    Plaintiff Taylor, on behalf of herself and class members, made a demand for relief, in writing, to Chrysler at least thirty (30) days prior to filing this complaint, as required by Mass. Gen. Laws ch. 93A § 9.3  Chrysler has declined Plaintiff's request.

176.    Based on the foregoing, Plaintiff Taylor and the Massachusetts Class are entitled to all remedies available pursuant to Mass. Gen. Laws ch. 93A, § 9, including refunds, actual damages, or statutory damages in the amount of 25 dollars per violation, whichever is greater, double or treble damages, attorney fees and other reasonable costs.  Plaintiff Taylor and the Massachusetts Class also request that the Court award equitable relief, including an order requiring Chrysler to adequately disclose and repair the TPMS defect and an order enjoining Chrysler from incorporating the defective TPMS valve stems into its vehicles in the future.

## SEVENTH CAUSE OF ACTION
### By Plaintiff Taylor on Behalf of the Massachusetts Class

---

3 Due to a dispute between the parties concerning material disclosed in the letter, it has been designated as confidential.

## For Breach of the Implied Warranty of Merchantability Under Massachusetts Law, M.G. L. §§ 2-314, 2-315

177.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

178.   Plaintiff Taylor asserts this cause of action on behalf of herself and the Massachusetts class.

179.   The Class Vehicles are õgoodsö within the meaning of Massachusetts law.

180.   A warranty that goods shall be merchantable and fit for the ordinary purposes for which such goods are used is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

181.   As the manufacturer of the Class Vehicles who also sells them through its dealers, Chrysler is a õmerchantö within the meaning of Massachusetts Law and with respect to the Class Vehicles.

182.   Chryslerøs implied warranty that the Class Vehicles were merchantable was part of the basis of the bargain between Chrysler and Plaintiffs and members of the Massachusetts Class.

183.   The Class Vehicles are not merchantable because the TPMS valve stems contain a dangerous safety defect in which they inevitably corrode when exposed to elements like road salt, leading to an unforeseeable tire air-out at any speed.  Accordingly, the TPMS valve stems not of fair average quality within the description and are not fit for the ordinary purposes for which such goods are used.

184. Chrysler was provided notice of these issues and defects through 160 NHTSA complaints, online forums discussing the issue, an open Transport Canada investigation on the defect, and actual notice from its consumers, directly and through its dealers.

185. As a direct and proximate result of Chrysler's breach of the warranties of merchantability, Plaintiff and members of the Massachusetts Class have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

a. For an order certifying the proposed classes and appointing Plaintiffs and their counsel to represent the classes;

b. For an order awarding Plaintiffs and the members of the classes actual, statutory, punitive, and/or any other form of damages provided by and pursuant to the statutes cited above;

c. For an order awarding Plaintiffs and the class members restitution, disgorgement and/or other equitable relief provided by and pursuant to the statutes cited above or as the Court deems proper;

d. For an order or orders requiring Chrysler to adequately disclose and remediate the TPMS defect and enjoining Chrysler from incorporating the defective TPMS into its vehicles in the future;

e. For an order awarding Plaintiffs and the class members of the classes pre-judgment and post-judgment interest;

f. For an order awarding Plaintiffs and the members of the classes reasonable attorney fees and costs of suit, including expert witness fees; and

g.    For an order awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: August 1, 2016

By:    /s/    Gary S. Graifman

Gary S. Graifman, Esq.
Robert A. Lubitz, Esq.
Kantrowitz Goldhamer
& Graifman, P.C.
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, New York 10977
Tel: (845) 356-2570

Nicholas A. Migliaccio, Esq.
Jason S. Rathod, Esq.*
Migliaccio & Rathod LLP
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: (202) 470-3520

Elmer Robert Keach, III, Esq.
Law Offices Of Elmer Robert Keach III,
P.C.
1040 Riverfront Center
P. O. Box 70
Amsterdam, NY  12010
Tel: (518) 434-1718

Gary E. Mason, Esq.
Whitfield Bryson & Mason LLP
5101 Wisconsin Ave NW, Suite 305
Washington, DC 20016
Tel: (202) 429-2290

Daniel Calvert, Esq.*

Parker Waichman LLP
27300 Riverview Center Boulevard
Suite 103
Bonita Springs, Florida 34134
Tel: (239) 390-1000

\* *Pro hac vice* admission to be sought