**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| STEVEN SPRATLEY, THOMAS HROMOWYK, TIMOTHY CANFIELD, ANDREW CATTANO, JAMES LETT, DENNIS PECK, SUSAN STEBBINS, AND YVETTE TAYLOR, on behalf of themselves and all others similarly situated, | Case No. 3:17-cv-00062-MAD-DEP |
| Plaintiffs, | Hon. Mae A. D'Agostino United States District Judge |
| v. | |
| FCA US LLC f/k/a CHRYSLER GROUP LLC | |
| Defendant. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................ 1

II.   FACTUAL BACKGROUND ........................................................................ 2

III.  LEGAL STANDARD ................................................................................... 3

IV.   ARGUMENT ................................................................................................ 2

    A.   Defendant Consented to General Jurisdiction in New York When It Registered to Do Business in New York ………………………………..4

    B.   Should the Court Decline to Find General Jurisdiction, the *Spratley* Action Should be Stayed Pending Supreme Court Resolution of *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, No.  16-466, Which Concerns the Scope of Specific Jurisdiction …………………..9

    C.   Should the Court Reach the Issue of Specific Jurisdiction Now, It Should Find that There is Specific Jurisdiction for the In-State and Out-of-State Plaintiffs……………………………………………..11

    D.   Should the Court Not Find Specific Jurisdiction for the Out-of-State Plaintiffs, It Should Exercise Supplemental Jurisdiction Over Their Claims…………………………………………………………..14

    E.   The "Fraudulent Joinder" Doctrine Does Not Apply Here…………..20

    F.   The "First-Filed" Rule Does Not Apply Here………………..21

V.   CONCLUSION ............................................................................................ 24

# TABLE OF AUTHORITIES

<u>Cases</u>

*Acorda Therapeutics, Inc. v. Mylan Pharms., Inc.*,
817 F.3d 755 (Fed. Cir. 2016) ………………………………………….……………………7, 8

*Acton v. Intellectual Capital Mgmt.*,
No. 15-CV-4004(JS)(ARL), 2015 U.S. Dist. LEXIS 172149 (E.D.N.Y. Dec. 28, 2015) ………10

*Agostini v. Felton*,
521 U.S. 203 (1997) ………………………………………………………………………8

*Augsbury Corp. v. Petrokey Corp.*,
97 A.D.2d 173 (App. Div. 1983) ………………………………………………………………7

*Authors Guild v. Dialog Corp.* (*In Re Literary Works in Elec. Databases Copyright Litig.*)
2001 U.S. Dist. LEXIS 2047 (S.D.N.Y. Feb. 27, 2001) ………………………………………...11

*Aybar v. Aybar*,
No. 706909/2016, 2016 N.Y. Misc. LEXIS 2263, 2016 N.Y. Slip. Op. 31139[U] (N.Y. Sup. Ct. May 25, 2016) ……………………………………………………………………………5, 8

*Bailen v. Air & Liquid Sys. Corp.*,
2014 NY Slip Op 32079(U) (Sup. Ct.) ……………………………………………………...6

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
902 F.2d 194 (2d Cir. 1990) …………………………………………………………………...3

*Beach v. Citigroup Alt. Invs. LLC*,
2014 U.S. Dist. LEXIS 30032 (S.D.N.Y. Mar. 7, 2014) ……………………………………5

*Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*,
486 U.S. 888 (1988) …………………………………………………………………………6

*Bonkowski v. HP Hood LLC*,
Case No. 15-4956, 2016 U.S. Dist. LEXIS 116492 (E.D.N.Y. Aug. 30, 2016) …………………6

*Bounds v. Pine Belt Mental Health Care Res.*,
593 F.3d 209 (2d Cir. 2010) …………………………………………………………………..20

*Bristol-Myers Squibb Co. v. Superior Court*,
377 F.3d 874 (Cal. 2016) ………………………………………………..1, 9, 10, 13, 14, 17, 24

*Brown v. Lockheed Martin Corp.*,
814 F. 3d 619 (2d Cir. 2016) ………………………………………………………...5, 9

*Cahen v. Toyota Motor Corp.*,
147 F. Supp. 3d 955 (N.D. Cal. 2015) …………………………………………………………..17

*Castillo v. Taco Bell of Am., LLC*,
960 F. Supp. 2d 401 (E.D.N.Y. 2013) …………………………………………………………..23

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010) …………………………………………………………………..14

*Corp. Jet Support, Inc. v. Lobosco Ins. Grp., L.L.C.*,
2015 NY Slip Op 32438(U) (Sup. Ct.) ……………………………………………………………...6

*Curtis v. Citibank, N.A.*,
226 F.3d 133 (2d Cir. 2000) ……………………………………………………………………… 21

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) …………………………………………………………………... 4, 6, 18

*Dekalb v. C.R. Bard, Inc.*,
No. CV 15-6063-R, 2015 U.S. Dist. LEXIS 141991…………………………………………….19

*Display Works, LLC v. Bartley*,
182 F. Supp. 3d 166 (D.N.J.) ………………………………………………………………… 8

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
722 F.3d 81 (2d Cir. 2013) ……………………………………………………………………… 3

*EMI Christian Music Grp., Inc. v. MP3Tunes, LLC*,
844 F.3d 79 (2d Cir. 2016) …………………………………………………………………..14

*Estate of Heiser v. Deutsche Bank Tr. Co. Ams.*,
2012 U.S. Dist. LEXIS 96817 (S.D.N.Y. July 10, 2012) ………………………………………10

*Fallman v. Hotel Insider, Ltd.*,
No. 14-cv-10140 (SAS), 2016 U.S. Dist. LEXIS 5895 (S.D.N.Y. Jan. 15, 2016) ……………4, 5

*In re Genentech Herceptin (Trastuzumab) Mktg. & Sales Practices Litig.*,
178 F. Supp. 3d 1374 (J.P.M.L. 2016) …………………………………………………………..20

*In re Gen. Motors LLC Ignition Switch Litig.*,
Case No 14-2543, 2016 WL 3920353 (S.D.N.Y. July 15, 2016) ……………………………….22

*Genuine Parts Co. v. Cepec*,
137 A.3d 123 (Del. 2016) …………………………………………………………………...9

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
564 U.S. 915 (2011) …………………………………………………………………....4

*Gracey v. Janssen Pharms.*,
No. 4:15-CV-407 (CEJ), 2015 U.S. Dist. LEXIS 57990 (E.D. Mo. May 4, 2015) ……………..18

*Gucci Am., Inc. v. Weixing Li*,
135 F. Supp. 3d 87 (S.D.N.Y. 2015) ……………………………………………………....13

*Gucci Am., Inc. v. Weixing Li*,
768 F.3d 122 (2d Cir. 2014) …………………………………………………………………5

*Hanly v. Powell Goldstein, LLP*,
2007 WL 747806 (S.D.N.Y. Mar. 9, 2007) ……………………………………………………..16

*Hanly v. Powell Goldstein, L.L.P.*,
290 F. App'x 435 (2d Cir. 2008) ……………………………………………………14, 17

*Hargrave v. Oki Nursery, Inc.*,
646 F.2d 716 (2d Cir. 1980) …………………………………………………………14, 19

*International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*,
326 U.S. 310 (1945) ……………………………………………………………………………7

*James v. AT&T Corp.*,
334 F. Supp. 2d 410 (S.D.N.Y. 2004) …………………………………………………………..23

*Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*,
No. 16-CV-1318 (GBD) (BCM), 2017 U.S. Dist. LEXIS 29806 (S.D.N.Y. Mar. 2, 2017) ……..3

*Kacocha v. Nestle Purina Petcare Co.*,
Case No. 15-5489, 2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016) ……………………………...22

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984) ……………………………………………………………………………..18

*Kernan v. Kurz-Hastings, Inc.*,
175 F.3d 236 (2d Cir. 1999) ……………………………………………………………..4, 14

*Landis v. North Am. Co.*,
299 U.S. 248 (1936) …………………………………………………………………………..10

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
17 F. Supp. 3d 385 (S.D.N.Y. 2014) ………………………………………………………..21

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
Case No. 11-2262, 2015 U.S. Dist. LEXIS 147561 (S.D.N.Y. Oct. 19, 2015) ……………..16, 17

*Locke v. Ethicon Inc.*,
58 F. Supp. 3d 757 (S.D. Tex. 2014) …………………………………………………………18

v

*Long v. Parry,*
921 F. Supp. 2d 269 (D. Vt. 2013) …………………………………………………....15, 16

*In re Magnetic Audiotape Antitrust Litig.,*
334 F.3d 204 (2d Cir. 2003) …………………………………………………………...3

*Meachum v. Outdoor World Corp.,*
235 A.D.2d 462 (App. Div. 1997) …………………………………………………………12

*Minholz v. Lockheed Martin Corp.,*
No. 1:16-CV-154, 2016 U.S. Dist. LEXIS 180208 (N.D.N.Y. Dec. 30, 2016) ………………… 6

*Mississippi Pub. Corp. v. Murphree,*
326 U.S. 438 (1946) …………………………………………………………………7

*Mosely v. Vitalize Labs, LLC,*
Case No. 13-2470, 2015 WL 5022635 (E.D.N.Y. Aug. 24, 2015) ……………………………...22

*Neirbo Co. v. Bethlehem Shipbuilding Corp.,*
308 U.S. 165 (1939) …………………………………………………………………7

*Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co.,*
243 U.S. 93 (1917) …………………………………………………………………..7

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.,*
880 F. Supp. 2d 801 (S.D. Ohio 2012) …………………………………………………12

*Rockefeller Univ. v. Ligand Pharms. Inc.,*
581 F. Supp. 2d 461 (S.D.N.Y. 2008) ………………………………………………5, 6

*Rushaid v. Pictet & Cie,*
68 N.E.3d 1 (N.Y. 2016) …………………………………………………………....13

*Shaffer v. Heitner,*
433 U.S. 186 (1977) …………………………………………………………………..18

*Shalala v. Illinois Council on Long Term Care, Inc.,*
529 U.S. 1, 18 (2000) …………………………………………………………………..8

*Sonera Holding B.V. v. Cukurova Holding A.S.,*
750 F.3d 221 (2d Cir. 2014) …………………………………………………………4

*State ex rel. Norfolk S. Ry. Co. v. Dolan,*
2017 WL 770977 (Mo. 2017) …………………………………………………………8

*Steuben Foods, Inc. v. Oystar Grp.*,
2013 U.S. Dist. LEXIS 187536 (W.D.N.Y. May 14, 2013) …………………………………...4, 5

*In re Syngenta AG MIR 162 Corn Litig.*,
2016 U.S. Dist. LEXIS 31958, 2016 WL 1047996 (D. Kan. Mar. 11, 2016) ……………………8

*Thomas v. Apple-Metro, Inc.*,
Case No. 14-4120, 2015 WL 505384 (S.D.N.Y. Feb. 5, 2015) …………………………………23

*Tomassini v. FCA U.S. LLC*,
No. 3:14-cv-1226 (N.D.N.Y.) …………………………………………………………..2, 11, 21, 22, 23

*Torres v. Johnson & Johnson*,
Case No. 14-cv-29741, 2015 U.S. Dist. LEXIS 107929 (S.D. W. Va. Aug. 17, 2015) ………...18

*Tulsa Cancer Inst., PLLC v. Genenteach Inc.*,
2016 WL 141859 (N.D. Okla. 2016) ……………………………………………………17, 19, 20

*United Mine Workers of Am. v. Gibbs*,
383 U.S. 715 (1966) ………………………………………………………………………19, 20

*Xchange Telecom Corp. v. Sprint Spectrum L.P.*,
No. 1:14-CV-54 (GLS/CFH), 2015 U.S. Dist. LEXIS 150816 (N.D.N.Y. Nov. 6, 2015) ……...10

Statutes

28 U.S.C. § 1332 ……………………………………………………………………….. 18

28 U.S.C. § 1367 ……………………………………………………………………….. 18

N.Y. C.P.L.R. § 302 …………………………………………………………………… 11

N.Y. GBL § 349 …………………………………………………………………………12

Plaintiffs Steven Spratley, Thomas Hromowyk, Timothy Canfield, Andrew Cattano, James Lett, Dennis Peck, Susan Stebbins, and Yvette Taylor on behalf of themselves and all others similarly situated ("Plaintiffs") submit this memorandum in opposition to the Motion to Dismiss, including both the accompanying memorandum ("Def. Br.") and the supplemental memorandum ("Def. Supp. Br.") submitted by FCA US LLC ("FCA," "Chrysler," or "Defendant").   For the reasons discussed herein, Defendant's Motion to Dismiss should be denied.

## I.        INTRODUCTION AND SUMMARY OF ARGUMENT

This Court possess both general and specific jurisdiction over FCA, and considerations of consistency and judicial economy strongly favor the continued adjudication of each named plaintiff's claims by this Court.   Pursuant to the New York registration statute and longstanding case law thereunder, Defendant's registration to conduct business in New York constitutes its consent to jurisdiction here.   Even if this was not the case, the Court also has specific jurisdiction over FCA with respect to the claims of New York plaintiffs Hromowyk and Spratley, as well as the other named plaintiffs, who were injured by the same defect and misconduct by FCA.[1]   With respect to the latter, even if independent specific jurisdiction was lacking, judicial economy considerations strongly favor the exercise of supplemental jurisdiction, and Defendant's unsupported and contradictory arguments that Plaintiff Hromowyk should be dismissed or disregarded for purposes of this analysis are entirely without merit.   This Court has jurisdiction over FCA and all claims asserted in this action, and Defendant's transparent attempt to prolong this litigation and escalate the costs incurred by all sides must be rejected.

---

[1] Alternatively, Plaintiffs request that this action be stayed pending the United States Supreme Court's resolution of *Bristol-Myers Squibb Co. v. Superior Court*, 377 P.3d 874 (Cal. 2016), which concerns the applicability of specific jurisdiction principles in circumstances analogous to those herein.

## II.     FACTUAL BACKGROUND

Plaintiffs brought this action on behalf of putative classes composed of purchasers and lessors of various Chrysler vehicles in Plaintiffs' respective states of residence.  Plaintiffs allege that the tire pressure monitoring system ("TPMS") with which these vehicles are equipped is defective, in that the metal alloy valve stems corrode and fail prematurely.  Specifically, Plaintiffs allege and will present ample evidence showing that the class vehicles' TPMS valve stems possess a common defect that affects all vehicle owners.  This common defect, along with Defendant's common marketing and omissions, have caused injury to Plaintiffs and class members, in that they paid more for their vehicles than they would have had they known of the defect and/or expended money to replace the defective units.

In late 2016, Defendant filed a motion similar to the one at issue, seeking dismissal based on an alleged lack of personal jurisdiction.  Around the same time, Defendant sought and Plaintiffs, in the interest of judicial economy, consented to the transfer of this action to this Court, where an action involving the same defect was already pending.  *See Tomassini v. Chrysler Group LLC (n/k/a FCA US LLC)*, No. 3:14-cv-1226 (N.D.N.Y.).  Following transfer, Defendant filed the instant motion.  Plaintiffs thereafter filed an Amended Class Action Complaint [Dkt. No. 51], adding Thomas Hromowyk as a named plaintiff and clarifying some of their allegations, and FCA subsequently filed its supplemental brief.

At all times relevant hereto, FCA (and Chrysler Group, its predecessor in interest) has been registered to conduct business in New York and has maintained an agent for service of process in the state.  *See* Dkt. No. 27-1 (New York corporate registration status of FCA, as of Dec. 7, 2016).  Defendant owns and operates parts distribution centers and employs at least 141 individuals in New

York.  In addition, FCA has numerous dealerships within the state, selling millions of vehicles and bringing in millions if not billions of dollars from New York commerce.

### III.    LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).  In deciding such a motion, "a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).  The showing plaintiffs are required to make is a "sliding scale" that "varies depending on the procedural posture of the litigation." *Id.* at 84 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations." *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2017 U.S. Dist. LEXIS 29806, at *17 (S.D.N.Y. Mar. 2, 2017) (internal citations, quotations, and alterations removed).  At this stage, the Court must "construe the pleadings and the affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Id.* at * 18 (quoting, *inter alia*, *S. New England Tel. Co. v. Global NAPS Inc.*, 624 F.3d 123, 138 (2d Cir. 2010).

Resolution of a personal jurisdiction dispute requires a two-part analysis.  In a diversity case, the court must first determine whether there is a statutory basis for exercising personal jurisdiction in reference to the law where the Court sits. *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d

236, 240 (2d Cir. 1999).  Then, the Court must decide "whether the exercise of personal jurisdiction . . . comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014).  Under the Due Process Clause, a state may "authorize its courts to exercise personal jurisdiction over an out-of-state defendant" only if "the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (alteration in original) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 923 (2011)).

## IV.   ARGUMENT

### A.  Defendant Consented to General Jurisdiction in New York When It Registered to Do Business in New York

"It is well-settled that registering one's corporation with the New York Department of State and designating an agent to receive process in New York constitutes consent to general jurisdiction in New York courts."  *Fallman v. Hotel Insider, Ltd.*, No. 14-cv-10140 (SAS), 2016 U.S. Dist. LEXIS 5895, at *7 (S.D.N.Y. Jan. 15, 2016) (citing *STX Panocean (UK) Co., Ltd. v. Glory Wealth Shipping Pte Ltd.*, 560 F.3d 127, 131 (2d Cir. 2009)); *see also Steuben Foods, Inc. v. Oystar Grp.*, 2013 U.S. Dist. LEXIS 187536, at *7 (W.D.N.Y. May 14, 2013) ("For more than sixty years, New York courts have determined that general jurisdiction may be asserted over a corporation solely on the basis that it has registered to do business in the forum.").

While Defendant counts to five when enumerating its arguments against general jurisdiction, it actually just repeats a few ill-conceived arguments.  *See* Def. Br. at 11.  First, Defendant argues that it had no notice that by registering in New York it was submitting to general jurisdiction.  *See* Def. Br. at 8-9.  Yet, "[i]n New York, foreign corporations have been on notice since 1916 that registration to conduct business in this state amounts to consent to general

4

jurisdiction here ….” *Aybar v. Aybar*, No. 706909/2016, 2016 N.Y. Misc. LEXIS 2263, 2016 N.Y.

Slip. Op. 31139[U], at * 9 (N.Y. Sup. Ct. May 25, 2016); *see also Fallman,* 2016 U.S. Dist. LEXIS

5895, at *7; *Steuben Foods, Inc.*, 2013 U.S. Dist. LEXIS 187536, at *7.  Indeed, *Defendant's own*

*Second Circuit authority* supports Plaintiffs' view:

> Jurisdictions other than Connecticut have enacted registration statutes that more
> plainly advise the registrant that enrolling in the state as a foreign corporation and
> transacting business will vest the local courts with general jurisdiction over the
> corporation.  ***The registration statute in the state of New York has been***
> ***definitively construed to accomplish that end*** ….

*Brown v. Lockheed Martin Corp.*, 814 F. 3d 619, 641 (2d Cir. 2016) (emphasis added).[2]  With

respect to New York, it is therefore clear that “[i]n maintaining an active authorization to do

business and not taking steps to surrender it as it has a right to do” Chrysler has been on

“constructive notice” that New York courts maintain general personal jurisdiction over it.

*Rockefeller Univ. v. Ligand Pharms. Inc.*, 581 F. Supp. 2d 461, 466 (S.D.N.Y. 2008) (collecting

cases).

Second, Defendant argues that subjecting it to general jurisdiction in New York would

violate its due process rights under *Daimler* because it is not “at home” in New York.  *See* Def.

Br. at 8-10.  But as Judge Castel observed, “[n]otwithstanding these limitations [of *Daimler*], a

corporation may ***consent*** to jurisdiction in New York under CPLR § 301 by registering as a foreign

corporation and designating a local agent.”  *Beach v. Citigroup Alt. Invs. LLC*, 2014 U.S. Dist.

LEXIS 30032, at *18 (S.D.N.Y. Mar. 7, 2014) (emphasis added); *see also  Gucci Am., Inc. v.*

*Weixing Li*, 768  F.3d 122, 136 n.15 (2d Cir. 2014) (noting that *Daimler* does not address the

exercise of personal jurisdiction where the corporate defendant consents); *Rockefeller Univ.*, 581

---

[2] Defendant's out-of-context quotations from *Brown* refer to the court's analysis of the
Connecticut registration statute at-issue there, which the Second Circuit expressly distinguished
from the New York statute.

F. Supp. 2d at 467 ("Because jurisdiction is premised upon consent, it is doubtful that the minimum contacts test under the due process clause presents an impediment to the exercise of jurisdiction.").[3]

In *Daimler,* the Court expressly distinguished jurisdiction based on forum contacts and jurisdiction based on consent. 134 S.Ct. at 755-756.  *Daimler* stands only for the proposition that *in the absence of consent*, a corporate defendant is subject to general personal jurisdiction only where it can fairly be regarded as being "at home." *Daimler*, 134 S. Ct. at 751; *Bailen v. Air & Liquid Sys. Corp.*, 2014 NY Slip Op 32079(U), ¶ 5 (Sup. Ct.) ("Although Daimler clearly narrows the reach of New York courts in terms of its exercise of general jurisdiction over foreign entities, it does not change the law with respect to personal jurisdiction based on consent."); *Corp. Jet Support, Inc. v. Lobosco Ins. Grp., L.L.C.*, 2015 NY Slip Op 32438(U), ¶ 4 (Sup. Ct.) (same).

Importantly, *Daimler* did not overrule (or even address) the long line of cases blessing the exercise of general jurisdiction over a foreign corporation based on the state's business registration procedures.  *See*, *e.g.*, *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.,* 486 U.S. 888, 889 (1988) (recognizing registration in Ohio operates as consent to general jurisdiction); *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 175 (1939); *Pennsylvania Fire Insurance Co. v.*

---

[3] FCA argues that *Bonkowski v. HP Hood LLC*, Case No. 15-4956, 2016 U.S. Dist. LEXIS 116492 (E.D.N.Y. Aug. 30, 2016) is "squarely" on point and "squarely" rejects Plaintiffs' argument that FCA consented to jurisdiction by registering to do business in New York. But the *Bonkowski* Court stated in its opinion that neither party had briefed the scope of New York's registration statute and that it declined to either define the scope of the statute and its impact on personal jurisdiction or "give [it] such an expansive reading." *Id.*, at **9-10.  In *Minholz v. Lockheed Martin Corp.*, No. 1:16-CV-154, 2016 U.S. Dist. LEXIS 180208 (N.D.N.Y. Dec. 30, 2016), also cited by Defendant, the court based its order on the mistaken view that the consent to general jurisdiction cases all "predate *Daimler*." *Id.* at * 26.  Here, the Court should disregard Defendant's authority because the matter has been fully briefed and because Plaintiffs have demonstrated that the precedent finding registration represents consent to general jurisdiction remains good law, with several New York courts relying on it after *Daimler*.

*Gold Issue Mining & Milling Co.,* 243 U.S. 93 (1917). The seminal case of *International Shoe* recognized a foreign defendant can be subject to the state's jurisdiction when it appoints an agent for service, even where the cause of action is unrelated to the defendant's in-state activities. *International Shoe,* 326 U.S. 310, 318 (1945). *International Shoe* expanded the scope of personal jurisdiction over corporations; it did not contract it. In *Mississippi Pub. Corp. v. Murphree*, the Supreme Court upheld traditional consent to jurisdiction via registration shortly after deciding *International Shoe*. 326 U.S. 438, 441 (1946) (defendant "consented" to jurisdiction by appointing a registered agent).

Following *International Shoe*, none of the Supreme Court's decisions concerning general jurisdiction, including *Goodyear* and *Daimler*, involved a defendant that registered for the right to conduct intrastate business, appointed an agent for service in the forum and conducted intrastate business pursuant to that right.   Rather, each case involved defendants that had *not* registered for the right to conduct intrastate business in the forum had *not* appointed an agent for service and who were *not* regularly conducting intrastate business in the forum. The exercise of general jurisdiction over a corporation that submits itself to the state's jurisdiction in exchange for the right to conduct intrastate business in the forum, which it then exercises, is entirely consistent with those holdings.[4]  *See, e.g., Acorda Therapeutics, Inc. v. Mylan Pharms., Inc.*, 817 F.3d 755, 769-70 (Fed. Cir. 2016) (O'Malley, J., concurring) ("Unless the Supreme Court or Congress overrules this line of Supreme Court authority [concerning registration as consent to general jurisdiction], we are bound to follow it.") (collecting authority for proposition); *see also In re Syngenta AG MIR 162 Corn Litig.*, 2016 U.S. Dist. LEXIS 31958, 2016 WL 1047996, at *3 (D. Kan. Mar. 11, 2016)

---

[4] New York state court decisions are fully in accord.  *See, e.g., Augsbury Corp. v. Petrokey Corp.*, 97 A.D.2d 173, 175 (App. Div. 1983) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 703-4 (1982)).

("The Court is not prepared to ignore such Supreme Court precedent based on speculation about how the Court might view jurisdiction in contexts other than that discussed in Daimler.").[5]

Ultimately, each state retains its traditional power to determine whether a foreign corporation consents to general jurisdiction. When faced with such state procedures, a corporation elects whether it wishes to set up residence, conduct intrastate commerce there, and submit itself to general jurisdiction, or whether it will not take up residence and merely conduct interstate commerce.  *See Aybar*, No. 706909/2016, 2016 N.Y. Misc. LEXIS 2263, at * 9 (stating that if parties – like FCA – would prefer to not be subject to general jurisdiction in this state then "they can always cancel their registration if their business interests lead them to do so."); *cf. Acorda Therapeutics, Inc.*, 817 F.3d 755 at 769-70 ("In the face of that legal authority, [defendant] knowingly chose to register to do business in Delaware, thereby accepting the implication of having done so… Unless the Supreme Court or Congress overrules this line of Supreme Court authority, we are bound to follow it.") (collecting authority for proposition).[6]  Either way, due

---

[5] In addition, it is highly unlikely that *Daimler* overruled these precedents *sub silentio* since doing so is strongly disfavored.  *See Shalala v. Illinois Council on Long Term Care, Inc*., 529 U.S. 1, 18 (2000); *Agostini v. Felton*, 521 U.S. 203, 237 (1997).

[6] Defendant's three cases in support of its argument that consent to jurisdiction contradicts *Daimler* are not persuasive.  First, none of FCA's cases come from the Second Circuit. Second, two of the cases on which FCA relies acknowledge that the circuit court and state supreme court permit companies to consent to jurisdiction by registration. *See*, *e.g.*, *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 173-175  (D.N.J.) (acknowledging that the Third Circuit Court of Appeals has determined that businesses can consent to jurisdiction by registering to do business in a state); *State ex rel. Norfolk S. Ry. Co. v. Dolan*, 2017 WL 770977, at * (Mo. 2017) ("Even before *Daimler*… this Court noted there was a split of authority as to whether a registration statute constitutionally can require consent to general jurisdiction in order to register to do business in a state… [s]imilarly, here, this Court finds there is no need to determine whether Missouri's registration statutes constitutionally could condition doing business in Missouri on consent to jurisdiction."). Third, the final case on which Defendant depends concerns Delaware's registration statute – not New York's statute. *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 129 (Del. 2016).  The Second Circuit has acknowledged that the New York registration statute has been read to require businesses to consent to jurisdiction when registering to do business in New York and mentioned

process is not violated. A corporation's voluntary submission to jurisdiction does not invoke due process concerns.

**B. Should the Court Decline to Find General Jurisdiction, the *Spratley* Action Should Be Stayed Pending Supreme Court Resolution of *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, No. 16-466, Which Concerns the Scope of Specific Jurisdiction**

In *Bristol-Myers Squibb Co. v. Superior Court*, 377 P.3d 874 (Cal. 2016), the California Supreme Court held that California had specific jurisdiction over an out-of-state pharmaceutical manufacturer, Bristol-Myers Squibb ("BMS"), for the claims of both the resident and nonresident plaintiffs who were injured by the misleading marketing, and negligent design and manufacture of Plavix, a prescription drug. The court determined BMS had purposely availed itself of the forum's benefits because of its contacts with the forum and that the California plaintiffs' claims concerning the misleading marketing of Plavix, and the injuries resulting from ingestion of the drug, arose out of BMS's California contacts. *Id.* at 887-88. BMS did not dispute specific jurisdiction with respect to the California plaintiffs. *Id.* at 888. In addition, the court held that California had jurisdiction over the claims of the non-California plaintiffs because the claims of resident and nonresident plaintiffs alike were "based on the same allegedly defective product and the assertedly misleading marketing and promotion of that product, which allegedly caused injuries in and outside the state. … BMS's nationwide marketing, promotion, and distribution of Plavix created a substantial nexus between the nonresident plaintiffs' claims and the company's contacts in California concerning Plavix." *Id.* at 888. On January 19, 2017, the U.S. Supreme Court granted BMS's petition for certiorari.

Here, the basis for specific jurisdiction is similar, and therefore the Court would benefit

---

that carefully drawn registration statutes could constitutionally require business to consent to registration. *Brown*, 814 F.3d, at 641.

from the Supreme Court's impending disposition of *Bristol-Myers Squibb*.  As in *Bristol-Myers Squibb*, the Defendant here cannot, and does not, dispute specific jurisdiction with respect to at least one New York plaintiff, Thomas Hromowyk.  Def. Supp. Br., at 9.  Similar to *Bristol-Myers Squibb*, Plaintiffs here submit that there is also specific jurisdiction over the claims of the nonresident Plaintiffs because they are based on the same allegedly defective product and misleading marketing of the product, which caused injuries inside and outside of the state.

Since the Supreme Court will rule soon on the propriety of this line of argument, the most prudent course of action is for this Court to temporarily stay the action.  "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co*., 299 U.S. 248, 254 (1936).  Courts in this circuit look to five factors in determining whether to enter a stay: (1) the private interests of the parties in proceeding apace with the civil litigation (2) the private interests of and burden on the parties if a stay is not entered; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.  *Xchange Telecom Corp. v. Sprint Spectrum L.P.*, No. 1:14-CV-54 (GLS/CFH), 2015 U.S. Dist. LEXIS 150816, at *5 (N.D.N.Y. Nov. 6, 2015).  "[W]here a higher court is close to settling an issue of law bearing on the action a stay is proper." *Estate of Heiser v. Deutsche Bank Tr. Co. Ams.*, 2012 U.S. Dist. LEXIS 96817, at *14 (S.D.N.Y. July 10, 2012) (internal citations and quotations omitted).  Accordingly, when a key issue is pending before a higher court, courts in the Second Circuit have found that evaluation of the five factors dictates that a stay is proper.  *See, e.g., id.* at 14-19; *Acton v. Intellectual Capital Mgmt.*, No. 15-CV-4004(JS)(ARL), 2015 U.S. Dist. LEXIS 172149, at *7 (E.D.N.Y. Dec. 28, 2015) ("[A] stay is appropriate and it is clear that the outcome of the Supreme Court Cases could potentially conclude this matter and will,

at the very least, settle important issues of law relating to [plaintiff's] claims."); *Authors Guild v. Dialog Corp. (In Re Literary Works in Elec. Databases Copyright Litig.)*, 2001 U.S. Dist. LEXIS 2047, at \*7 (S.D.N.Y. Feb. 27, 2001) ("The Supreme Court's review … is likely to have a significant, if not dispositive, impact on the cases here. Proceeding with this litigation several months before the Supreme Court more precisely defines the claims at issue would be unnecessarily wasteful of both the Court's and the litigants' resources. Moreover, a stay of several months will cause no prejudice or hardship …."). This Court should do the same.

### C. Should the Court Reach the Issue of Specific Jurisdiction Now, It Should Find that There is Specific Jurisdiction for the In-State and Out-of-State Plaintiffs

New York's long arm statute provides for specific jurisdiction over a non-domiciliary that, "in person or through an agent," does any of the following things: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state"; (2) "commits a tortious act within the state"; or (3) "commits a tortious act without the state causing injury to person or property within the state," if it also "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." *See* N.Y. C.P.L.R. § 302. Personal jurisdiction over the non-domiciliary is limited to causes of action "arising from" the enumerated acts. *Id.*

Here, as in *Tomassini*, even Defendant does not dispute that there is personal jurisdiction with respect to New York Plaintiff Hromowyk, who resided in New York State at the time he purchased his vehicle. The Court also has personal jurisdiction with respect to Plaintiff Spratley.

New York's long-arm statute extends to Chrysler from its tortious omissions and misrepresentations to consumers who are injured in New York, like Spratley. To allege a

consumer protection claim in New York under GBL § 349, a plaintiff may be "exposed to deceptive conduct aimed at New York that led to a harmful transaction, even if that transaction took place outside of the state*." In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 862 (S.D. Ohio 2012) (citing *Meachum v. Outdoor World Corp.*, 235 A.D.2d 462 (App. Div. 1997)). The fact that Plaintiff Spratley did not purchase his vehicle in New York does not disqualify his consumer protection claim in light of Defendant's deceptive conduct aimed at New York. In fact, the dealership from which Plaintiff Spratley purchased his car, which is located just across the Hudson River in Jersey City, directs advertisements to New York residents[7] and, as evidenced by Plaintiff Spratley, sells cars to residents of New York.

As detailed above, Defendant clearly purposely availed itself of the state.  Defendant regularly conducts substantial advertising for its vehicles in the state, sells vehicles through its affiliated dealerships and extends warranties to New York residents.  Moreover, Defendant has a parts distribution center in the state and touts its listing on the New York Stock Exchange. Defendant manufactured vehicles with an inherent defect that is of a make and model that it advertised in the state.  Defendant sold the vehicles to New York Plaintiffs Hromowyk and Spratley through its dealerships, without disclosing the defect, causing injury in the form of economic loss.  Put simply, Defendant purposely availed itself of New York and Plaintiffs Hromowyk's and Spratley's claims arise from that conduct.  Critically, for the "arising under" prong, New York law is similar to California law in that there need only be an "articulable nexus or substantial relationship between the business transaction and the claim asserted.  This inquiry

---

[7] https://www.youtube.com/watch?v=fk05cnUNHI (last accessed Dec. 9, 2016) (appears to be taken down now); https://www.youtube.com/watch?v=2i0f25kNs20 (last accessed March 27, 2017) (marketing to New York, including with an opening shot of the New York skyline coupled with the words "no matter where you are").

is relatively permissive, and does not require causation. …" *Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 11 (N.Y. 2016) (internal citations, quotations, and alterations omitted). [8]

Personal jurisdiction lies for the out-of-state plaintiffs as well because their claims are "based on the same allegedly defective product and the assertedly misleading marketing and promotion of that product, which allegedly caused injuries in and outside the state. … [Defendant's] nationwide marketing, promotion, and distribution of [the product] created a substantial nexus between the nonresident plaintiffs' claims and the company's contacts in New York concerning [the product]." *Bristol-Myers Squibb Co.*, 377 P.3d at 888 (finding personal jurisdiction under comparable California personal jurisdiction standard). That is, the injuries of the non-New York Plaintiffs – like the injuries of the New York Plaintiffs – are all anchored in Defendant's uniform, nationwide design, manufacture, and distribution of defective TPMS valve stems found in its vehicles that Defendant marketed and sold to Plaintiffs while failing to disclose the defect. Moreover, New York was no small part of this national operation; rather

---

[8] Defendant emphasizes that Plaintiffs' claims are not sufficiently related to New York because they allege injuries at the point of sale, which took place outside of New York. But FCA's test of relatedness is not that of the Second Circuit's. Similar to California law, the Second Circuit has established a sliding-scale analysis for assessing relatedness between claims for the purposes of determining personal jurisdiction. "When an entity has only limited contacts with a forum, relatedness requires that 'the plaintiff's injury was proximately caused by those contacts,' but when an entity's contacts with the forum 'are more substantial,' it is not unreasonable to exercise personal jurisdiction 'even though the acts within the state are not the proximate cause of the plaintiff's injury… it is sufficient that those contacts be a 'but for' cause of the plaintiff's injury, rather than the 'proximate cause' of the injury.'" *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 98 (S.D.N.Y. 2015) (citing *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998)). FCA is registered to do business in New York, has a parts supplier plant in New York, sells hundreds of thousands of products in New York, and makes millions, if not tens of millions, of dollars in New York. Even if its specific conduct in New York did not proximately cause injury to out-of-state plaintiffs, but for its wrongful omissions and misrepresentations in New York, all Plaintiffs may have known about the defect (depending on how Defendant disclosed the defect to purchasers in New York). FCA's significant contacts with New York and its deceptive activities that, once revealed, could impact all claims, satisfies the relatedness test in the Second Circuit.

"[Defendant's] contacts with [the state] are substantial and the company has enjoyed sizeable revenues from the sales of its product here—the very product that is the subject of the claims of all of the plaintiffs." *Id.* at 889.

Personal jurisdiction over Defendant here for all of the claims pled also comports with due process.  The Second Circuit recently held that personal jurisdiction was proper for a company *and* its executive when the company had "400 users [of its product] located in New York" and "provided services to New York customers." *EMI Christian Music Grp., Inc. v. MP3Tunes, LLC*, 844 F.3d 79, 97-99 (2d Cir. 2016).  The Court added that the company's nationwide market presence and provision of services did not relieve it from jurisdiction, but rather, constituted evidence for the exercise of jurisdiction since its New York contacts were part and parcel of this national presence.  *See id.* (referencing *Kernan v. Kurz-Hastings, Inc*., 175 F.3d 236, 243 (2d Cir. 1999) and *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010).  Here, Defendant has far greater contacts than 400 consumers of its product within the state so due process is readily satisfied.

### D. Should the Court Not Find Specific Jurisdiction for the Out-of-State Plaintiffs, It Should Exercise Supplemental Jurisdiction Over Their Claims

As an alternate basis for personal jurisdiction, the Court should exercise pendent personal jurisdiction over Defendant. Authority from the Second Circuit is clear that when a court has specific jurisdiction over some of the claims in an action, it may hear the remaining claims through pendent jurisdiction "[i]f all of plaintiffs' claims derive from a common nucleus of operative fact such that they would ordinarily be expected to be tried in one judicial proceeding." *Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716, 719 (2d Cir. 1980); *see also Hanly v. Powell Goldstein, L.L.P.*, 290 F. App'x 435, 438 (2d Cir. 2008) ("We have held that once a defendant properly is brought before a district court on a claim covered by Section 302(a)(3) [long-arm statute], the court may

14

entertain claims that are not expressly covered by the long-arm statute, so long as they derive from the same nucleus of operative fact as claims that are."); *Long v. Parry*, 921 F. Supp. 2d 269, 273 (D. Vt. 2013) ("In this Circuit, a court sitting in diversity and acquiring personal jurisdiction over a defendant as to some of the claims asserted in the complaint, has the power to determine all other claims asserted in the complaint that have a common nucleus of critical fact.") (internal quotations omitted).

Here, because the Court undisputedly has specific jurisdiction over Plaintiffs Hromowyk's and Spratley's claims against Defendant, it may exercise pendent jurisdiction over the other Plaintiffs' claims against Defendant.  Plaintiffs' claims all arise under a common nucleus of operative facts, including that: (1) FCA made uniform, material omissions and misrepresentations as to the safety defect in the tire pressure monitoring systems in all Plaintiffs' vehicles both at the time of sale and after the sale by failing to disclose the defect; (2) Plaintiffs brought vehicles in for repairs that FCA uniformly did not cover, even though all Plaintiffs' vehicles came with the same warranty and that warranty obligated FCA to repair the defect; (3) Plaintiffs all seek reimbursement for any repairs incurred in relation to the tire pressure monitoring system and the difference between what they paid for the vehicles versus what they would have paid had they known about the defect, (4) Plaintiffs all seek a declaration that FCA's warranty covers the defect, and (5) Plaintiffs all seek an order requiring FCA to disclose the defect and enjoining FCA from repairing the defect with the same defective parts.

Defendant recognizes this doctrine, but argues that "[f]ederal courts limit [its] application" to cases where "a federal statute establishes personal jurisdiction over a defendant." Def. Supp. Br., p. 7. But the Second Circuit – and district courts within it – have not imposed such a limitation. *Hanly* and *Long* are instructive. In *Hanly*, the plaintiffs brought state-law claims for libel,

malicious prosecution, and intentional infliction of emotional distress ("IIED"). *See Hanly*, 290 F. App'x at 439-441; *see also Hanly v. Powell Goldstein, LLP*, 2007 WL 747806, at *1 (S.D.N.Y. Mar. 9, 2007). Although the plaintiffs did not bring any federal claims, the Second Circuit held that because "the libel claim [wa]s based on the same factual predicate as the malicious prosecution and IIED claim, the district court was permitted to hear that claim under the doctrine of pendent personal jurisdiction." *Hanly*, 290 F. App'x at 438. And in *Long*, the plaintiff brought state-law claims for "professional negligence, breach of contract, breach of fiduciary duty … violation of Vermont's consumer protection law … abuse of process and malicious prosecution." *Long*, 921 F. Supp. 2d at 272. Although the plaintiff did not bring any federal claims, Judge Sessions held that because "the claims raise from a common nucleus of operative fact," the Court may exercise pendent personal jurisdiction "regardless of whether the Court has independent personal jurisdiction over Parry with respect to these counts." *Id.* at 274. As these two decisions make clear, the Second Circuit does not limit pendent personal jurisdiction to instances where a federal statute confers personal jurisdiction.[9]

---

[9] Defendant quotes *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, Case No. 11-2262, 2015 U.S. Dist. LEXIS 147561 (S.D.N.Y. Oct. 19, 2015) in support of its contention that the Second Circuit limits pendent jurisdiction to cases involving a federal statute of rule.  But, that case involved multiple defendants that allegedly engaged in an extraterritorial conspiracy to manipulate an interest-rate benchmark, which gave rise to a number of different plaintiffs alleging claims ranging from, for example, fraud to unjust enrichment to tortious interference with contracting to violating the Sherman Antitrust Act and Racketeer Influenced and Corrupt Organizations Act.  A hallmark of the *LIBOR* litigation was that the plaintiffs could not show that the defendants aimed their wrongful conduct at the United States, let alone any one forum. The Southern District concluded that it could not exercise supplemental personal jurisdiction over plaintiffs alleging only state law claims "unrelated to defendants contacts with the forum state[,]" which was the transferor states throughout the country in that multi-district litigation. *Id.*, at 147 n. 40. This case is distinguishable from *LIBOR* because the plaintiffs are suing one defendant over the same conduct in which it engaged from New York to Massachusetts to Michigan to New Jersey to Ohio. Unlike in *LIBOR*, there is no question that Defendant directed its activity toward New York, where it sold a Class Vehicle to Plaintiff Hromowyk, and omitted and misrepresented information about a Class Vehicle to Plaintiff Spratley.  Similarly, there is no question that Defendant engaged in the same

Defendant also erroneously contends that pendent jurisdiction cannot apply to multiple parties – only multiple claims.  That is false.  The Second Circuit exercised pendent jurisdiction over multiple state-law claims on behalf of more than one plaintiff in *Hanly*, 290 F. App'x, at 437-438; *accord Bristol-Myers Squibb Co.*, 377 P.3d, at 877-78.   Notably, Defendant does not cite a single case within this Circuit in support of its proposition and yet, ironically, in a case that Defendant cites in support of its argument against pendent personal jurisdiction, the Southern District of New York exercised pendent jurisdiction over the unjust enrichment claims of multiple plaintiffs. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 U.S. Dist. LEXIS 147561, at *148.  Defendant bases its argument on the idea that exercising supplemental jurisdiction over multiple parties would subject "a national company to suit by any resident of any state in any state", which does not comport with notions of fair play or substantial justice.  Def.'s Br., p. 17 (citing, *e.g.*, *Tulsa Cancer Inst., PLLC v. Genenteach Inc.*, 2016 WL 141859 (N.D.Okla. 2016)).  But that would be true of any case involving pendent personal jurisdiction – even ones where federal claims are at issue.  The Second Circuit's answer has not been to foreclose the exercise of pendent personal jurisdiction, but to ensure that it is fairly applied by analyzing whether the potential supplemental claims arise out of the same nucleus of operative fact.[10]

---

exact activities in Massachusetts, Michigan, New Jersey, and Ohio. FCA's omissions and misrepresentations to Plaintiffs outside of New York arise out of the same nucleus of operative fact as its conduct in New York because FCA engaged in the same deceptive and unfair practices at issue in New York.

[10] Defendant's cases in support of its position are all outside of the Second Circuit and involve plaintiffs that did not make a counter-argument to Defendant's challenge of personal jurisdiction, *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 962 (N.D. Cal. 2015); did not allege that Defendant maintained an agent for service of process in the forum state, *Torres v. Johnson & Johnson*, Case No. 14-cv-29741, 2015 U.S. Dist. LEXIS 107929, at *4 (S.D. W. Va. Aug. 17, 2015); or failed to allege nation-wide wrongful conduct. *Locke v. Ethicon Inc.*, 58 F. Supp. 3d 757, 764 (S.D. Tex. 2014).

Defendant's argument that 28 U.S.C. § 1367 does not provide a basis for jurisdiction is also misplaced.  *See* Def. Supp. Br. at 5-7.  Defendant belabors the obvious: 28 U.S.C. § 1367 does not provide an independent basis for jurisdiction for *all* Plaintiffs.  However, here, there is *original jurisdiction* for the claims asserted by Plaintiffs Spratley and Hromowyk pursuant to the Class Action Fairness Act ("CAFA"), *see* 28 U.S.C. § 1332(d)(2)(A), since the amount-in-controversy for the class they seek to represent exceeds $5,000,000 and they are minimally diverse from the Defendant.  Since personal jurisdiction is established over the Defendant with respect to Plaintiffs Spratley and Hromowyk by virtue of CAFA, the court may also exercise supplemental jurisdiction over the claims of the other plaintiffs since those claims, too, arise from a common nucleus of operative fact.

That the other Plaintiffs reside in another forum is of no moment since the "central concern of the inquiry into personal jurisdiction" consists of the relationship among the *defendant*, the forum, and the litigation."  *Daimler*, 134 S.Ct. at 754 (emphasis added).  A Plaintiff's residence may be relevant in determining the Defendant's contacts with the forum, but the "plaintiff's residence in the forum State is not a separate requirement, and the lack of residence will not defeat jurisdiction established on the basis of defendant's contacts."  *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 780 (1984); *see also Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).  Accordingly, other courts have found jurisdiction with respect to the claims of out-of-state plaintiffs once personal jurisdiction is established for the in-forum plaintiffs.  *See, e.g., Gracey v. Janssen Pharms*., No. 4:15-CV-407 (CEJ), 2015 U.S. Dist. LEXIS 57990, at *8 n.2 (E.D. Mo. May 4, 2015) (finding it proper to exercise jurisdiction over defendants "with respect to the out-of-state plaintiffs' claims" because the court had established jurisdiction "over defendants with respect to the in-state plaintiffs' claims"); *cf. Dekalb v. C.R. Bard, Inc.,* No. CV 15-6063-R, 2015 U.S. Dist.

LEXIS 141991, at *4 (C.D. Cal. Oct. 19, 2015) ("When analyzing general or specific personal jurisdiction, a court is not concerned with whether it can properly assert jurisdiction over a plaintiff, but instead whether it can haul an out-of-state defendant into its court.").

Defendant also appears to argue that even if the Court may indeed have pendent jurisdiction, the Court should decline to exercise such jurisdiction. Def. Br. at 17, n. 7. That position is without merit. Rather, the U.S. Supreme Court has held that the justification for pendent jurisdiction "lies in considerations of judicial economy." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). And the Second Circuit has articulated the rationale for pendent jurisdiction as follows:

> The federal judiciary has an obvious interest in every litigation in having the whole case tried at one time. The unified federal courts certainly have a stake in discouraging duplicative litigation not only within a single district but within the entire system. Were plaintiffs prohibited from asserting all their claims in this case they could bring action in a United States district court in California on the claims not heard in New York. That court in its discretion could then transfer the matter to the district court in New York under 28 U.S.C. § 1404 or could try part of the controversy in California. In either event burdens would be placed on the federal judiciary and on the litigants hardly serving the goal of a speedy and just determination of litigation.

*Hargrave*, 646 F.2d at 720. Here, if the Court were to decline to exercise pendent jurisdiction, the remaining Plaintiffs could (in theory) file suit against Defendant in the federal courts of their respective home states. The result would be four additional matters in Ohio, New Jersey, Massachusetts, and Michigan that Plaintiffs would likely request to be transferred to this District because of its familiarity with the subject matter.[11]  Defendant cites *Tulsa Cancer Inst., PLLC*, 2016 WL 141859 (N.D. Okla. 2016) in support of this scenario – arguing that courts should not apply pendent personal jurisdiction to a party and require parties to file separate lawsuits around

---

[11] For this same reason, FCA's suggestion that Plaintiffs should file in a state that can exercise general jurisdiction over FCA does not align with the goals of judicial economy and efficiency.

the country.  But *Tulsa Cancer Inst., PLLC* is a perfect example of how exercising pendent personal jurisdiction achieves the goals of judicial economy and efficiency.  There, the Northern District of Oklahoma refused to permit plaintiffs to amend the Complaint to add additional plaintiffs from separate states alleging identical claims for breach of warranty and unjust enrichment concerning a cancer treated drug marketed and distributed by defendants.  *Id*., at *12-13.  Plaintiffs re-filed in separate states and, months later, were transferred by the Judicial Panel on Multidistrict Litigation right back to the Northern District of Oklahoma for coordination.  *In re Genentech Herceptin (Trastuzumab) Mktg. & Sales Practices Litig.*, 178 F. Supp. 3d 1374, 1375 (J.P.M.L. 2016).  Accordingly, Defendant's argument that the Court should not exercise pendent jurisdiction is inconsistent with "considerations of judicial economy." *United Mine Workers of Am.*, 383 U.S. at 726.

### E.  The "Fraudulent Joinder" Doctrine Does Not Apply Here

Defendant contends that the "fraudulent joinder" doctrine somehow applies here and should somehow operate to defeat specific jurisdiction over Plaintiff Hromowyk's claim. Defendant's argument has no basis in law or fact. "The doctrine of fraudulent joinder is meant to prevent plaintiffs from joining non-diverse parties in an effort to defeat federal jurisdiction." *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010) (citations omitted). "Under the doctrine, courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court." *Id.* "The defendant bears the heavy burden of proving the circumstances by clear and convincing evidence, with all factual and legal ambiguities resolved in favor of plaintiff." *Id.* Defendant cites *no case* applying the fraudulent joinder doctrine to a case like this one where the plaintiffs *did not* assert their claims in state court and *did not* seek to defeat federal jurisdiction. Thus, the fraudulent

joinder doctrine has no bearing whatsoever on Plaintiff Hromowyk who asserted his claim in federal court and does not seek to defeat federal jurisdiction.

Defendant's argument about the timing of Plaintiff Hromowyk's joining of this case are similarly meritless. First, as detailed above, and by Plaintiffs in prior letter briefing, Plaintiff Spratley has at all times had viable New York State law claims. Second, in suggesting that Plaintiff Hromowyk should have sought to intervene in the *Tomassini* action, Defendant ignores the fact that the deadline for amendment of that action has passed. For these additional reasons, Defendant's argument about "fraudulent joinder" misses the mark.

### F.   The "First-Filed" Rule Does Not Apply Here

Defendant's argument that the first-filed rule requires immediate dismissal of Plaintiff Hromowyk's claim is meritless. "The classic application of the first-filed rule is where mirror-image lawsuits between the same parties are filed in different venues." *Liberty Mut. Ins. Co. v. Fairbanks Co.,* 17 F. Supp. 3d 385, 393 (S.D.N.Y. 2014) (citations and quotations omitted). In determining if the first-filed rule applies, the Second Circuit has cautioned that "[a] court must be careful, when dismissing a second suit between the same parties as duplicative, not to be swayed by a rough resemblance between the two suits without assuring itself that beyond the resemblance already noted, the claims asserted in both suits are the same." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 136 (2d Cir. 2000).

Here, the two lawsuits differ in several respects. In *Tomassini v. FCA*, the plaintiff only asserts New York state law claims relating solely to FCA's minivans. By contrast, the instant lawsuit includes claims for different plaintiffs, multiple vehicles beyond FCA's minivans, and multiple states beyond New York. The only basis that Defendant puts forth for ignoring these clear differences is a bare conclusory assertion that Hromowyk lacks standing to represent

21

purchasers of other vehicles.  But the very authority Defendant cites in support of this proclamation

makes clear that there is no such bright line rule.  *See In re Gen. Motors LLC Ignition Switch Litig.*,

Case No 14-2543, 2016 WL 3920353, at *41 (S.D.N.Y. July 15, 2016), *cited in* Deft.'s Supp. Br.,

p. 10 n.2 (holding that named plaintiffs had standing to bring claims on behalf of owners of the

same car model *or other models with "sufficiently similar defects"*) (emphasis added).  Rather,

> courts in [the Second] Circuit have held that, subject to further inquiry at the class
> certification stage, a named plaintiff has standing to bring class action claims under
> state consumer protection laws for products that he did not purchase, so long as
> those products, and the false or deceptive manner in which they were marketed, are
> "sufficiently similar" to the products that the named plaintiff did purchase.

*Mosely v. Vitalize Labs, LLC*, Case No. 13-2470, 2015 WL 5022635, at *7 (E.D.N.Y. Aug. 24,

2015).  "[E]ven assuming there is, somewhere, a line demarcating that permissible degree of

variation between a plaintiff's claims and those of his putative class members from that quantum

which destroys [Article III standing]," this is a complex, fact-sensitive inquiry, which cannot be

made at this early stage.  *See Kacocha v. Nestle Purina Petcare Co.*, Case No. 15-5489, 2016 WL

4367991, at *10 (S.D.N.Y. Aug. 12, 2016).  Not surprisingly, Defendant cites no authority

suggesting that the first-filed rule may be applied in the manner it advocates, allowing piecemeal

dismissal of individual named plaintiffs in very different and much broader action.

Moreover, Defendant's attempt to fit the present circumstances into the first-filed rule is

unsupported and entirely self-contradictory.  In order to overcome the clear differences between

the putative classes here and in *Tomassini*, Defendant asks the Court to disregard the actual class

sought and *assume* that Hromowyk only represents purchasers of the specific vehicle model he

owns, which is not the case.  However, Hromowyk does not own the same make and model of

vehicle owned by the *Tomassini* plaintiff, so Defendant then asks the Court to assume with respect

to *Tomassini* that the actual class sought *does* exist for this purpose.  In short, the extension of the

first-filed rule advocated by Defendant entails disregarding the putative classes to the extent they differ but consider them to the extent they are similar.

In support of its argument, Defendant relies on Fair Labor Standards Act ("FLSA") cases wherein collective certification had already been granted in the first-filed case and, accordingly, examination of the definitions of the collectives was logical and appropriate.  *See Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 2d 401, 403 (E.D.N.Y. 2013) and *Thomas v. Apple-Metro, Inc.*, Case No. 14-4120, 2015 WL 505384, at *2 (S.D.N.Y. Feb. 5, 2015), *cited in* Deft's Supp. Br., p. 10.[12]  By contrast, neither in this case nor in *Tomassini*, which are Rule 23 opt-out class certification cases and not FLSA opt-in collective actions, has certification been sought or granted. Despite its histrionic assertion that "there could not possibly a case that cries out for dismissal under the first-filed rule more than this one," Defendant fails to provide, nor can Plaintiffs find, anything that supports its extension of the rule to dismiss one of several named plaintiffs based on the extent his specific claims, curtailed in their representative capacity via an unbriefed and premature standing determination, might partially overlap with those asserted in an earlier uncertified class action.  Accordingly, this case is not competing with the *Tomassini* action and the first-filed rule does not require its dismissal.

## V. CONCLUSION

For the reasons set forth herein, and based on the pleadings in this matter, this Court should deny Defendant's motion to dismiss or stay *Spratley* until the Supreme Court issues its decision in *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, No. 16-466.

---

[12] The sole pre-certification action Defendant cites is also clearly distinguishable. *See James v. AT&T Corp.*, 334 F. Supp. 2d 410 (S.D.N.Y. 2004).  Therein, the respective cases involved wholly coterminous classes and were otherwise identical in all material respects, and plaintiffs conceded the latter action was filed solely for tactical purposes. *Id.* at 411-12.

23

Dated: March 27, 2017

By:    /s/    Gary S. Graifman

Gary S. Graifman, Esq.
Robert A. Lubitz, Esq.
Kantrowitz Goldhamer
& Graifman, P.C.
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, New York 10977
Tel: (845) 356-2570

Nicholas A. Migliaccio, Esq.
Jason S. Rathod, Esq.*
Migliaccio & Rathod LLP
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: (202) 470-3520

Elmer Robert Keach, III, Esq.
Law Offices Of Elmer Robert Keach III,
P.C.
1040 Riverfront Center
P. O. Box 70
Amsterdam, NY  12010
Tel: (518) 434-1718

Gary E. Mason, Esq.
Jennifer S. Goldstein, Esq.
Whitfield Bryson & Mason LLP
5101 Wisconsin Ave NW, Suite 305
Washington, DC 20016
Tel: (202) 429-2290

Daniel Calvert, Esq.
Parker Waichman LLP
27300 Riverview Center Boulevard
Suite 103
Bonita Springs, Florida 34134
Tel: (239) 390-1000

* *Pro hac vice* admission to be sought