**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

STEVEN SPRATLEY, TIMOTHY CANFIELD,
ANDREW CATTANO, JAMES LETT, DENNIS
PECK, SUSAN STEBBINS, YVETTE TAYLOR
THOMAS HROMOWYK,

                    **Plaintiffs,**

  vs.                                          3:17-CV-0062
                                                         (MAD/DEP)
FCA US LLC, formerly known as Chrysler
Group LLC,

                    **Defendant.**

_____

**APPEARANCES:**                                 **OF COUNSEL:**

**PARKER WAICHMAN LLP**               **DANIEL C. CALVERT, ESQ.**
27300 Riverview Center Boulevard, Suite 103
Bonita Springs, Florida 34134
Attorneys for Plaintiffs

**LAW OFFICES OF ELMER ROBERT KEACH**   **ELMER R. KEACH, III, ESQ.**
One Pine West Plaza, Suite 109
Albany, New York 12205
Attorneys for Plaintiffs

**KANTROWITZ, GOLDHAMMER & GRAIFMAN**   **GARY S. GRAIFMAN, ESQ.**
747 Chestnut Ridge Road, Suite 200             **JAY I. BRODY, ESQ.**
Chestnut Ridge, New York 10977
Attorneys for Plaintiffs

**WHITFIELD, BRYSON LAW FIRM**           **GARY E. MASON, ESQ.**
5101 Wisconsin Avenue, NW, Suite 305        **JENNIFER S. GOLDSTEIN, ESQ.**
Washington, DC 20016
Attorneys for Plaintiffs

**MIGLIACCIO & RATHOD LLP**               **JASON S. RATHOD, ESQ.**
412 H Street NE, Suite 302                    **NICHOLAS MIGLIACCIO, ESQ.**
Washington, DC 20002
Attorneys for Plaintiffs

**THOMPSON, COBURN LAW FIRM**          **KATHY A. WISNIEWSKI, ESQ.**
One US Bank Plaza                              **STEPHEN A. D'AUNOY, ESQ.**

St. Louis, Missouri 63101
Attorneys for Defendant

**POPE, SCHRADER LAW FIRM**  ALAN J. POPE, ESQ.
2 Court Street, 4th Floor
P.O. Box 510
Binghamton, New York 13902
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiffs Steven Spratley, Timothy Canfield, Andrew Cattano, James Lett, Dennis Peck, Susan Stebbins, Yvette Taylor, and Thomas Hromowyk ("Plaintiffs") filed this proposed class action against Defendant FCA US LLC ("Chrysler") alleging that Chrysler concealed a known safety defect in the valve stem of certain vehicles. *See* Dkt. No. 51 at ¶ 2. Presently before the Court is Chrysler's motion to dismiss the amended complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). *See* Dkt. Nos. 49, 57. For the following reasons, Chrysler's motion is granted in part and denied in part.

## II. BACKGROUND

Plaintiffs are eight different individuals, each of whom separately purchased an allegedly defective vehicle made by Chrysler. *See* Dkt. No. 51 at ¶ 8. Plaintiffs allege that Chrysler concealed a known safety defect in the tire pressure monitoring systems ("TPMS") of some of Chrysler's most popular vehicles, including the Chrysler Town and Country Minivan, the Dodge Grand Caravan Minivan, the Jeep Liberty, and the Dodge Journey SUVs. *See id.* at ¶¶ 1, 7. A TPMS is an electronic system designed to monitor the air pressure of a vehicle's tires and warn drivers of under-inflation. *See id.* at ¶¶ 2-3. According to Plaintiffs, there is one particular component of the TPMS in some of Chrysler's vehicles that is defective: the valve stem. *See id.*

at ¶ 4. Because the valve stem protrudes from the tire, it is subject to corrosion, and the metal alloys used by Chrysler were not sufficiently resistant to corrosion. *See id.* at ¶¶ 4, 10. When a valve stem fails, a tire can quickly lose air without warning, creating a dangerous condition akin to a tire blowout. *See id.* at ¶ 4. Each Plaintiff in this case had problems with corroded valve stems on their vehicles, and several Plaintiffs experienced dangerous flat tires as a result. *See id.* at ¶¶ 8, 66, 72, 78, 83, 88, 93.

Plaintiffs allege that Chrysler has known since 2008 that the valve stems in the vehicles in question were not sufficiently resistant to corrosion. *See id.* at ¶ 27. Furthermore, Chrysler received numerous complaints concerning the defective valve stems, and it was well aware of the problem. *See id.* at ¶¶ 31-36. Chrysler changed the design of its valve stems sometime in 2011 and began using more corrosion-resistant material. *See id.* at ¶ 48. Despite the significant safety risk posed by the defective valve stems in certain models, Chrysler has failed to warn owners, replace the unsafe valve stems, or reimburse owners for repairs. *See id.* at ¶ 49.

Plaintiffs are residents of New York, New Jersey, Michigan, Ohio, and Massachusetts. *See id.* at ¶¶ 13-20. Specifically, Spratley is a New York resident, and he purchased a 2010 Chrysler Town & Country minivan in New Jersey in 2012, *see id.* at ¶¶ 58-59; Hromowyk is a New York resident, and he purchased a 2010 Dodge Grand Caravan in New York in 2009, *see id.* at ¶¶ 63-64;[1] Canfield is a Michigan resident and purchased a 2010 Dodge Journey in Michigan in 2013, *see id.* at ¶¶ 69-70; Cattano is a New Jersey resident, and he purchased a 2010 Jeep Liberty in New Jersey in 2010, *see id.* ¶¶ at 75-76; Lett is an Ohio resident, and he purchased a 2010 Chrysler Town & Country in Ohio in 2010, *see id.* at ¶¶ 81-82; Peck is a Michigan resident, and

---

[1] Hromowyk was not named as a plaintiff in the original complaint. *See* Dkt. No. 1. But after Chrysler filed its first motion to dismiss, Plaintiffs amended their complaint to add Hromowyk as a Plaintiff. *See* Dkt. No. 51.

3

he purchased a 2010 Dodge Journey in Michigan in 2010, *see id.* at ¶¶ 85-86; Stebbins is a New Jersey resident, and she purchased a 2010 Dodge Journey in New Jersey in 2012, *see id.* at ¶¶ 90-91; Taylor is a Massachusetts resident, and she purchased a 2010 in Massachusetts in 2010, *see id.* at ¶¶ 95-96. In sum, only two of the Plaintiffs—Spratley and Hromowyk—are New York residents, and Hromowyk is the only Plaintiff who purchased a car in New York. Subject matter jurisdiction in this case is based on the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453. Plaintiffs assert four different classes: a New York class, a New Jersey class, an Ohio class, and a Michigan class. *See id.* at ¶ 103.[2] Each class brings one or more claims against Chrysler based on applicable state law.

On February 17, 2017, Chrysler filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). *See* Dkt. No. 49. As Chrysler is a Delaware limited liability company with its principal place of business in Michigan, Chrysler argued that the Court lacked personal jurisdiction over Chrysler and that the original complaint should be dismissed in its entirety. *See id.* at 1. In response, Plaintiffs amended their complaint to add Hromowyk—the only Plaintiff to both reside in New York and purchase his car in New York—as a Plaintiff. *See* Dkt. No. 51. Chrysler then submitted a supplemental memorandum addressing Plaintiffs' amended complaint. *See* Dkt. No. 57. Plaintiffs responded to the motion to dismiss, and Chrysler submitted a reply. *See* Dkt. Nos. 58, 61.

### III. DISCUSSION

**A.     Standard of Review**

---

[2] Although Taylor purchased her car in Massachusetts and is a resident of Massachusetts, Plaintiffs' amended complaint does not specify that Plaintiffs seek to represent a Massachusetts class. *See* Dkt. No. 51 at ¶ 103. However, the complaint lists causes of action under Massachusetts state law, so Plaintiffs presumably intended to include a proposed Massachusetts class.

4

Where a party moves to dismiss an action for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *See Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). Prior to discovery, a plaintiff may survive a Rule 12(b)(2) motion to dismiss by pleading in good faith legally sufficient allegations of jurisdiction. *See id.* (citing *Ball v. Metallurgie Hoboken–Overpelt*, 902 F.2d 194, 197 (2d Cir. 1990)); *see also* Fed. R. Civ. P. 11. That is, where a court relies only upon the pleadings and supporting affidavits, a plaintiff need only make a prima facie showing of personal jurisdiction over a defendant. *See CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986) (citation omitted); *see also Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005).

"A prima facie showing of jurisdiction 'does not mean that plaintiff must show only some evidence of jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction.'" *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (quotation omitted). Pleadings that assert only "conclusory non-fact-specific jurisdictional allegations" or state a "legal conclusion couched as a factual allegation" do not meet this burden. *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (quotation omitted). Finally, while a court is to assume the truth of all well-pleaded factual allegations that support a finding of personal jurisdiction, *see Ball*, 902 F.2d at 197, it should "not draw 'argumentative inferences' in the plaintiff's favor," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).

**B.** **Personal Jurisdiction**

Federal courts engage in a two-step inquiry in order to determine whether they may exercise personal jurisdiction over a foreign defendant. "First, we look to the law of the forum state to determine whether personal jurisdiction will lie. If jurisdiction lies, we consider whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (citation omitted).

There are two different types of personal jurisdiction that a court may exercise over a foreign corporation. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). First, there is general (or "all-purpose") jurisdiction, which "permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff." *Id.* Second, there is specific (or "case-linked") jurisdiction, which "is available when the cause of action sued upon arises out of the defendant's activities in a state." *Id.* Here, Chrysler argues that the Court lacks general jurisdiction over Chrysler, and that it only has specific jurisdiction over Chrysler as to the claims asserted by Hromowyk. *See* Dkt. No. 57 at 3-5.

### *1. General Jurisdiction*

In *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014), the Supreme Court clarified that a court may assert general jurisdiction over a foreign corporation only where the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." Furthermore, *Daimler* "established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." *Brown*, 814 F.3d at 627 (citing *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 39-41 (2d Cir. 2014)). In this case, Defendant is a Delaware limited liability company, and its principal place of business is in Michigan. *See* Dkt.

No. 49 at 6. Therefore, the Court cannot exercise general jurisdiction over Defendant under the theory that it is "essentially at home" in New York, and Plaintiffs do not argue otherwise. Instead, Plaintiffs assert that Defendant consented to general jurisdiction in New York by registering to conduct business in the state. *See* Dkt. No. 51 at ¶ 24; Dkt. No. 58 at 4.

In order to conduct business in New York, a foreign corporation must register with the state and appoint an agent for service of process. N.Y. Bus. Corp. Law § 1301(a). Before *Daimler*, such registration was generally considered to amount to a consent to general jurisdiction in New York. *See Augsbury Corp. v. Petrokey Corp.*, 97 A.D.2d 173, 176 (3d Dep't 1983) ("We reject [defendant's] argument that due process has been violated by the finding of personal jurisdiction solely on the basis of its registration to do business. The privilege of doing business in New York is accompanied by an automatic basis for personal jurisdiction"). As one district court noted shortly before *Daimler* was decided, "[f]or more than sixty years, New York courts have determined that general jurisdiction may be asserted over a corporation solely on the basis that it has registered to do business in the forum." *Steuben Foods, Inc. v. Oystar Grp.*, No. 10-CV-7890, 2013 WL 2105894, *3 (W.D.N.Y. May 14, 2013); *but see Wright v. Maersk Line, Ltd.*, No. 99-CV-11282, 2000 WL 744370, *1 (S.D.N.Y. June 9, 2000) (finding that authorization to do business in New York "does not, in and of itself, constitute 'doing business' in the state so as to subject a foreign corporation to personal jurisdiction").

The Second Circuit recently took up a very similar issue in *Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016). There, the plaintiff argued that the District of Connecticut could exercise personal jurisdiction over the defendant because it had registered to do business in Connecticut and had thus consented to general jurisdiction in the state. *See id.* at 622. Noting that the Connecticut Supreme Court had never definitively interpreted the scope of the

7

Connecticut registration statute, the Second Circuit determined that registration did not constitute a consent to general jurisdiction. *See id.* at 636. Instead, the court found it more plausible that foreign corporations registering to do business in Connecticut were submitting to specific jurisdiction over "only matters arising from the corporate transaction of business within the state, not all matters no matter where arising." *Id.* Because it found that the Connecticut registration statute did not confer general jurisdiction over foreign corporations, the Second Circuit did not decide whether such a law would offend due process. *See id.* at 640*; see also id.* at 631 ("[O]nly if personal jurisdiction has attached under state law do we reach the constitutional question of whether due process is offended thereby") (quoting *U.S. Trust Co. v. Bohart*, 495 A.2d 1034 (Conn. 1985)).

The court did, however, appear skeptical of the idea that registration statutes could still serve as a basis for general jurisdiction in light of the Supreme Court's decision in *Daimler*:

> The analysis that now governs general jurisdiction over foreign corporations—the Supreme Court's analysis having moved from the "minimum contacts" review described in *International Shoe* to the more demanding "essentially at home" test enunciated in *Goodyear* and *Daimler*—suggests that federal due process rights likely constrain an interpretation that transforms a run-of-the-mill registration and appointment statute into a corporate 'consent'—perhaps unwitting—to the exercise of general jurisdiction by state courts.

*Id.* at 637. Despite that skepticism, the court noted that a registration statute "that could be fairly construed as requiring foreign corporations to consent to general jurisdiction" would present "a more difficult constitutional question about the validity of such consent after *Daimler*." *Id.* at 640. The court also indicated that the New York registration statute presents this "more difficult constitutional question" because it "has been definitively construed" to provide consent to general jurisdiction. *Id.*

Since *Daimler*, a number of courts in this circuit have considered the question of whether New York's registration statute still provides a basis for general personal jurisdiction. The substantial majority of those courts have found that it does not. *See Famular v. Whirlpool Corp.*, No. 16-CV-944, 2017 WL 2470844, *4 (S.D.N.Y. June 7, 2017) ("After *Daimler*, with the Second Circuit cautioning against adopting an 'overly expansive view of general jurisdiction,' the mere fact of [defendant] being registered to do business is insufficient to confer general jurisdiction in a state that is neither its state of incorporation [n]or its principal place of business") (alterations in original) (quoting *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 105 (S.D.N.Y. 2015)); *accord Wilderness USA v. Deangelo Bros.* LLC, No. 17-CV-6491, 2017 WL 3635123 (W.D.N.Y. Aug. 23, 2017); *Minholz v. Lockheed Martin Corp.*, No. 16-CV-154, 2016 WL 7496129, *9 (N.D.N.Y. Dec. 30, 2016); *Taormina v. Thrifty Car Rental*, No. 16-CV-3255, 2016 WL 7392214, *7 (S.D.N.Y. Dec. 21, 2016); *Bonkowski v. HP Hood LLC*, No. 15-CV-4956, 2016 WL 4536868, *3 (E.D.N.Y. Aug. 30, 2016).

Although at least two district courts have found that registering to do business in New York constitutes consent to general jurisdiction even after *Daimler*, those courts did not examine the issue particularly thoroughly; they merely recited the rule without closely examining the implications of *Daimler*. *See Fallman v. Hotel Insider Ltd.*, No. 14-CV-10140, 2016 WL 316378, *2 (S.D.N.Y. Jan. 15, 2016) ("It is well-settled that registering one's corporation with the New York Department of State and designating an agent to receive process in New York constitutes consent to general jurisdiction in New York courts"); *Beach v. Citigroup Alt. Invs. LLC*, No. 12-CV-7717, 2014 WL 904650, *6 (S.D.N.Y. Mar. 7, 2014) (mentioning *Daimler* in dicta only to say that it did not limit a foreign corporation's consent to general jurisdiction through registration in New York). Additionally, at least two New York state trial courts have also concluded that

9

registering in New York and appointing an agent for service of process still constitutes consent to general jurisdiction post-*Daimler*. *Corp. Jet Support, Inc. v. Lobosco Ins. Grp., LLC*, No. 651976, 2015 WL 5883026, *2 (N.Y. Sup. Ct. Oct. 7, 2015); *Bailen v. Air & Liquid Sys. Corp.*, No. 190318, 2014 WL 3885949, *4 (N.Y. Sup. Ct. Aug. 5, 2014). Both of those cases, however, rely on *Beach* as the only authority for the assertion that registering to do business in New York constitutes consent to general jurisdiction even after *Daimler*. *See Corporate Jet Support, Inc.*, 2015 WL 5883026, at *2; *Bailen*, 2014 WL 3885949, at *4. But the Court is not persuaded by the dicta in *Beach*, which does not closely examine the issue.

The Court agrees with the majority of district courts that have considered this issue: after *Daimler*, registration to do business in New York does not amount to consent to general jurisdiction. In *Daimler*, the Supreme Court rejected the idea that corporations are subject to general jurisdiction in every state where they conduct substantial business as "unacceptably grasping." *Daimler*, 134 S. Ct. at 761. Since every state in the union has a business registration statute, treating the registration to do business in a state as an implicit consent to general jurisdiction must also be "unacceptably grasping." *See Brown*, 814 F.3d at 640 ("If mere registration and the accompanying appointment of an in-state agent—without an express consent to jurisdiction—nonetheless sufficed to confer general jurisdiction by implicit consent, every corporation would be subject to general jurisdiction in every state in which it registered, and *Daimler*'s ruling would be robbed of meaning by a back-door thief"). Therefore, the Court does not have general jurisdiction over Defendant.

### 2. Specific Jurisdiction

Federal Rule of Civil Procedure 4(k)(1)(A) permits a federal court to "look to the long-arm statute of the State in which it sits to establish a statutory basis for the exercise of personal

10

jurisdiction over a defendant." *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 18 (E.D.N.Y. 2016) (citing Fed. R. Civ. P. 4(k)(1)(A)). If the long-arm statute permits personal jurisdiction, courts then look to whether personal jurisdiction comports with constitutional due process protections. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation. For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)).

### a. Spratley and Hromowyk

Plaintiffs Spratley and Hromowyk are the only Plaintiffs in this case who are New York residents. Chrysler does not dispute that the Court has personal jurisdiction over Hromowyk's claims, but it argues that the Court lacks jurisdiction over Spratley's claims. *See* Dkt. No. 57 at 5, 7. Although Plaintiffs do not specify which provisions of the New York long-arm statute provide the basis for specific jurisdiction over Sprately's claims, they appear to argue that New York Civil Practice Law and Rules ("CPLR") §§ 302(a)(1) and 302(a)(3) enable the Court to exercise jurisdiction.

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci ex rel. Licci*, 732 F.3d at 168 (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)). Here, Chrysler concedes that it transacted business in New York, but it argues that Spratley's claims do not arise from that business activity. *See* Dkt. No. 61 at 4. "For a cause of action to arise from the

11

defendant's business transaction in the state, there must be 'an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.'" *Deitrick v. Gypsy Guitar Corp.*, No. 16-CV-616, 2016 WL 7494881, *5 (S.D.N.Y. Dec. 28, 2016) (quoting *Saudi v. Marine Atl., Ltd.*, 306 Fed. Appx. 653, 654 (2d Cir. 2009)). Spratley, a New York resident, purchased his used 2010 Chrysler minivan in Jersey City, New Jersey sometime in 2012. *See* Dkt. No. 51 at ¶ 58. The complaint does not allege any facts indicating that Spratley's claims arise from Chrysler's business activity in New York.

In their opposition, Plaintiffs argue that the Court has specific jurisdiction over Spratley's claims because of Chrysler advertisements directed at New York residents. *See* Dkt. No. 58 at 12. Plaintiffs cite just one case to support this theory, *In re Porsche Cars North American, Inc.*, 880 F. Supp. 2d 801, 862 (S.D. Ohio 2012). However, the portion of that case cited by Plaintiffs concerns whether certain plaintiffs had standing; it does not address the issue of personal jurisdiction. *See id.* Furthermore, the advertisements that Plaintiffs cite in their opposition were not even Chrysler advertisements. *See* Dkt. No. 58 at 12. Instead, they were advertisements for the dealership that sold Spratley his car, and that dealership is not a party in this case. *See id.* The Court is not persuaded that advertising directed at New York by a third-party dealership provides the basis for specific jurisdiction over Chrysler with regard to Spratley's claims.

To establish personal jurisdiction under CPLR § 302(a)(3), a plaintiff must show that "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302 (2011). Defendant argues that the Court

12

does not have personal jurisdiction over Spratley's claims pursuant to CPLR § 302(a)(3) because Spratley has not shown that his injury occurred in New York. *See* Dkt. No. 49-1 at 14.

To determine whether an injury occurred within the state, New York courts apply the "situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 356 (S.D.N.Y. 2014) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999)). "[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." *Id.* (alteration in original) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001)). In this case, the original event that caused Spratley's injury occurred in New Jersey, where he purchased his car; the fact that he may have suffered financial consequences in New York does not change the situs of the injury. *See Whitaker*, 261 F.3d at 209 ("The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York"). Since Spratley's injury took place in New Jersey, CPLR § 302(a)(3) cannot provide the basis for jurisdiction over his claims.

Because neither CPLR §§ 302(a)(1) nor 302(a)(3) apply to Spratley's claims, the Court does not have personal jurisdiction over Chrysler with regard to Spratley's claims. The Court does, however, have personal jurisdiction over Chrysler with regard to Hromowyk's claims.

### b. Out-of-State Plaintiffs

The six remaining Plaintiffs are not New York residents, and they did not purchase their allegedly defective vehicles in New York. Nevertheless, Plaintiffs argues the Court has specific jurisdiction over their claims because the out-of-state Plaintiffs' injuries "are anchored in

13

Defendant's uniform, nationwide design, manufacture, and distribution of defective TPMS valve stems found in its vehicles." Dkt. No. 58 at 13. Essentially, Plaintiffs argue that the out-of-state Plaintiffs' claims need not arise from Chrysler's New York activities because the out-of-state Plaintiffs' claims are the same as the New York Plaintiffs' claims and arise out of Chrysler's nationwide activity. However, the Supreme Court recently rejected this very theory of personal jurisdiction.

In *Bristol-Myers Squibb Co. v. Superior Court of Calilfornia*, 137 S. Ct. 1773 (2017), hundreds of plaintiffs sued Bristol-Myers Squibb ("BMS"), alleging that they were harmed by Plavix, one of the company's drugs. The vast majority of the plaintiffs were not California residents and had not purchased Plavix in California. *See id.* at 1778. Although BMS did business in California, it did not develop, manufacture, or package Plavix in the state. *See id.* Nevertheless, the California Supreme Court found that California courts had specific jurisdiction over the nonresident plaintiffs' claims because BMS had "wide-ranging" contacts with the state and because the nonresidents' claims were very similar to the California plaintiffs' claims. *See id.* The court applied a "sliding scale approach to specific jurisdiction" under which "the more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim." *See id.* (quoting *Bristol-Myers Squibb Co. v. Superior Court*, 377 P.3d 874, 885 (Cal. 2016))).

The Court in *Bristol-Myers Squibb* rejected the "sliding scale" approach and as resembling "a loose and spurious form of general jurisdiction." *Id.* at 1781. Unlike general jurisdiction, a court may only exercise specific jurisdiction where there is an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919

(2011)).  In *Bristol-Myers Squibb*, the Court found specific jurisdiction lacking because there was no connection between BMS's California contacts and the nonresidents' claims.  *See id.* ("The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims").  Similarly, in this case, the out-of-state Plaintiffs have shown no connection between their claims and Chrysler's contacts with New York.  Therefore, the Court lacks specific jurisdiction over the out-of-state Plaintiffs' claims.

      Alternatively, Plaintiffs argue that the Court should exercise pendent personal jurisdiction over the out-of-state Plaintiffs' claims.  *See* Dkt. No. 58 at 14.  "[U]nder the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process, and the federal and [non-federal] claims 'derive from a common nucleus of operative fact,' the district court may assert personal jurisdiction over the parties to the related [ ] claims even if personal jurisdiction is not otherwise available."  *Cohen v. Facebook, Inc.*, Nos. 16-CV-4453, 16-CV-5158, 2017 WL 2192621, *9 (E.D.N.Y. May 18, 2017) (alterations in original) (quoting *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993)).  "Pendent jurisdiction traditionally refers to the joinder of a state-law claim by a party already presenting a federal question claim against the same defendant."  *Famular*, 2017 WL 2470844, at *6 (quoting *Baylis v. Marriot Corp.*, 843 F.2d 658, 663-64 (2d Cir. 1988)).  Here, however, Plaintiffs propose a different application of pendent personal jurisdiction.  Plaintiffs argue that because the Court has specific jurisdiction over at least one Plaintiff's New York state law claims, the Court should exercise supplemental personal jurisdiction over the out-of-state Plaintiffs' claims, which arise from the laws of their respective states.  *See* Dkt. No. 58 at 15.

This issue was recently addressed by the court in *DeMaria v. Nissan North America, Inc.*, No. 15-CV-3321, 2016 WL 374145, *8 (S.D. Ill. Feb. 1, 2016). In *DeMaria*, seventeen plaintiffs from sixteen different states sued Nissan based on state law causes of action, *see id.* at *1, and the plaintiffs did not assert a single claim for which there was nationwide personal jurisdiction, *see id.* at *8. The court found that it had specific jurisdiction only over the claims of the single Illinois plaintiff in the case. *See id.* at *8. The non-Illinois plaintiffs argued that the court should exercise pendent personal jurisdiction over their claims because all of the plaintiffs' claims arose out of the same nucleus of operative fact: the defective nature of Nissan's vehicles, and its knowledge of those issues. The court disagreed and determined there was no relationship between the non-Illinois plaintiffs' claims and Nissan's Illinois activities:

> Under the circumstances of this case, where each plaintiff's claim is predicated on the law of the particular state where he or she purchased a car and the claims of the other plaintiffs as alleged remain unrelated to anything that transpired in Illinois, imposing personal jurisdiction for all of the claims because specific jurisdiction may lie as to this one plaintiff's claims would run afoul of the traditional notions of fair play and substantial justice that form the bedrock of any court's personal jurisdiction analysis.

*Id.* at *8.

Other district courts have recently rejected similar arguments for the application of pendent personal jurisdiction. *See Famular*, 2017 WL 2470844, at *6; *Tulsa Cancer Inst., PLLC v. Genetech Inc.*, No. 15-CV-157, 2016 WL 141859, *4 (N.D. Okla Jan. 12, 2016). Furthermore, the exercise of pendent personal jurisdiction is discretionary, *see Cohen*, 2017 WL 2192621, at *9, and even if the Court were to have the authority to exercise pendent personal jurisdiction over the out-of-state Plaintiffs' claims, the Court declines to do so.

**C.    Hromowyk's Claims**

16

Chrysler does not dispute that the Court has personal jurisdiction over Hromowyk's claims. However, Chrysler asserts two different grounds—the fraudulent joinder doctrine and the first-filed rule—for dismissing Hromowyk's claims. *See* Dkt. No. 57 at 7-10.

"The doctrine of fraudulent joinder is meant to prevent plaintiffs from joining non-diverse parties in an effort to defeat federal [diversity] jurisdiction." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004). By fraudulently joining a non-diverse party, a plaintiff could prevent a defendant from removing an action to federal court. "In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plainiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). But this case was not removed from state court, and Hromowyk was not added to defeat diversity jurisdiction. Simply put, the doctrine of fraudulent joinder is not applicable in this case.

Chrysler also argues that Hromowyk's claims are barred by the first-filed rule because they are duplicative of a separate suit that is pending before this Court, *Tomassini v. Chrysler Group LLC*, No. 14-CV-1226 (N.D.N.Y.). "The classic application of the first-filed rule is 'where mirror-image lawsuits between the same parties are filed in different venues.'" *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 393 (S.D.N.Y. 2014) (quoting *U.S. ex rel. Cestra v. Cephalon, Inc.*, No. 10-CV-6457, 2014 WL 1087960, *4 (S.D.N.Y. Mar. 19, 2014)). In that situation, the general rule is that the first party to file its complaint determines which court will hear the parties' claims. *See id.* However, there are two reasons why this case does not call for a classic application of the first-filed rule.

17

First, both suits were filed in the same district. The first-filed rule is rarely applied to cases within the same district because those cases can be consolidated for discovery and/or trial pursuant to Federal Rule of Civil Procedure 42(a). *See Alvarez v. Gold Belt, LLC*, No. 08-CV-4871, 2009 WL 1473933, *2 (D.N.J. May 26, 2009); *see also Arctic Cat, Inc. v. Polaris Indus. Inc.*, No. 13-CV-3579, 2014 WL 5325361, *14 (D. Minn. Oct. 20, 2014) (finding that the first-filed rule is not intended to govern the resolution of multiple lawsuits before the same district court but is instead "a venue or forum selection mechanism encouraging dismissal of a laterfiled suit in a different district"). Second, some of the parties in the two suits do not overlap. Specifically, all of the Plaintiffs in this case are different from those in *Tomassini*. "However, the existence of non-overlapping claims or parties does not disqualify lawsuits from the first-filed rule." *Liberty*, 17 F. Supp. 3d at 393; *see also Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 235 (E.D.N.Y. 2012) (applying the first-filed rule and dismissing an action where the plaintiffs' putative class action was sufficiently similar to actions previously filed in other federal district courts).

The first-filed rule affords district courts broad discretion to dismiss duplicative lawsuits. *Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 2d 401, 404 (E.D.N.Y. 2013). "This discretion arises from the court's power to administer its docket to conserve judicial resources, and to promote the efficient and comprehensive disposition of its cases." *Id.*; *see also AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 722 (2d Cir. 2010) (citations and quotations omitted) ("Deference to the first filing embodies considerations of judicial administration and conservation of resources, and recognizes that a party who first brings an issue into a court of competent jurisdiction should be free from the vexation of concurrent litigation over the same subject matter").

Plaintiffs argue that the first-filed rule should not apply because the putative class in this suit differs from the putative class in *Tomassini* in two important respects: it includes plaintiffs from states outside of New York, and it includes types of vehicles that are not a part of the putative class in *Tomassini*. *See* Dkt. No. 58 at 21. But the Court has determined that it does not have personal jurisdiction over the out-of-state Plaintiffs' claims or over Spratley's claims. Therefore, Hromowyk is the only remaining Plaintiff, and this action can no longer be distinguished from *Tomassini* by the presence of the out-of-state Plaintiffs. The only potential difference that remains between the two putative classes is Plaintiffs' assertion that the class in this case will include vehicle models that are not included in the *Tomassini* class.

At this time, the Court declines to apply the first-filed rule to dismiss this action. Additionally, for the time being, the Court will not consolidate this case with *Tomassini* because the two cases are at very different stages of the litigation process. *See KGK Jewelry LLC v. ESDNetwork*, No. 11-CV-9236, 2014 WL 7333291, *2 (S.D.N.Y. Dec. 24, 2014) ("Courts have routinely denied consolidation motions where there is a stark difference in the procedural posture of the actions, finding that judicial economy would not be served by consolidating two actions at disparate stages of litigation"); *see also Kamdem Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 137 (S.D.N.Y. 2016) (citing cases). Instead, the interests of judicial administration and conservation of resources are best served by staying this case pending the outcome of the class certification motion in *Tomassini*, which is set to be filed in the very near future. *See Tomassini*, No. 14-CV-1226, Dkt. No. 176.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. Nos. 49, 57) is **GRANTED in part** as to Plaintiffs Spratley, Canfield, Cattano, Lett, Peck, Stebbins, and Taylor, and the motion is **DENIED in part** as to Plaintiff Hromowyk; and the Court further

**ORDERS** that this action is stayed pending the outcome of the forthcoming class certification motion in *Tomassini v. FCA US LLC*, No. 14-CV-1226 (N.D.N.Y.), a related case currently pending before this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 12, 2017
Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge